Charles McLouth, Respondent, and Pliny T. Sexton, Appellant, as Trustees under the Will of Caroline Cuyler, Deceased, v. George C. Hunt et al., Respondents.

1. Appeal — Testamentary Trust. Where there remains a possibility that the contingencies contemplated by a will, upon which remainders to the immediate beneficiaries of a trust may be defeated, will happen, the question as to whether certain items are to be treated as income or as capital is one in which the trustees have a legal interest sufficient to warrant an appeal.

2. Life Tenant and Remainderman. Where a will creates separate trusts in favor of each of certain persons in being, who are to receive the respective incomes until they arrive at a certain age and then are to receive the corpus, such beneficiaries are to be considered as life tenants before reaching the specified age and as remaindermen thereafter; and the principles governing those relations are applicable to questions as to whether items of the trust property are to be treated as income or as capital.

3. Premium upon Trust Securities. The question whether the depreciation, through approaching maturity, of the premium upon government securities constituting the capital of a testamentary trust estate, and transmitted by the testator, should be borne by the life tenant or by the remainderman, is to be determined by the meaning and intention of the testator, derived from the language employed in the creation of the trust, the relation of the parties to each other, their condition and all the surrounding facts and circumstances.

4. Depreciation of Premium upon United States Bonds. A testatrix, in creating a trust of which her grandchildren were, in effect, made life tenants up to a specified age and then remaindermen, directed that while life tenants they should receive the "full income." She owned certain United States bonds which were apportioned by the surrogate to the capital of the trust, at a premium, and they were so retained by the executors as trustees. Held, that it was her intention that the life tenants should receive the whole annual interest of the bonds without diminution by the reservation of a portion thereof to meet any depreciation in

the market value of the bonds through their approaching maturity — that is, that the premium should not be charged to the life tenants; and that this intention of the testatrix was controlling.

5. PREMIUM UPON TRUST SECURITIES. *Quære,* whether, upon principle, as between the life tenant and the remainderman of a testamentary trust estate the life tenant can properly be charged with the premium, or with the loss occasioned by the wearing away of the premium, upon government securities in which the estate is invested.

6. STOCK DIVIDENDS. When a stock dividend, declared by a corporation and allotted to shares of its original capital stock belonging to a ·testamentary trust estate, constitutes, as matter of fact, a distribution of accumulated earnings or profits, it represents income and belongs to the life tenant of the trust estate as between him and the remainderman.

7. ACCUMULATED EARNINGS ON CORPORATE STOCK. When questions arise under a will, between life tenant and remainderman, with respect to accumulated earnings upon capital stock of a corporation, the courts must determine them according to the nature and substance of the thing, and are not concluded from treating such earnings as income by the form of their distribution or by the terms employed by the corporation.

*McLouth* v. *Hunt,* 92 Hun, 607, affirmed.

(Argued October 7, 1897; decided November 23, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered January 25, 1896, which affirmed a judgment entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Pliny T. Sexton, Trustee,* appellant in person. The certificate for twenty-five and four-tenths shares of the increased capital stock of the Western Union Telegraph Company, received therefrom in December, 1892, by the trustees under the will of Mrs. Cuyler, as their portion of said company's ten per cent stock dividend, simply constitute, together with the certificate previously held for 254 shares of the capital stock of said company, the evidence of the said trustees' title to the same relative interest in, or proportionate ownership of, said company, which, before said stock dividend, was equally and alone represented by said old certificate for 254 shares. Said stock dividend did not increase or alter the said trustees'

relative interest in, or proportionate ownership of, said company, or the character thereof. Such ownership, in its entirety, remains, as before, a part of the principal of the trust estates in the custody of said trustees, and said twenty-five and four-tenths shares of said company's increased capital stock are not income of said trust estates, and cannot lawfully be distributed as such to the current beneficiaries of such income, but must be retained for the remaindermen of said trust estates. (*In re Barton,* 4 Ves. 800; *Brander* v. *Brander,* L. R. [5 Eq. Cas.] 238; *Burrall* v. *B. R. R. Co.,* 75 N. Y. 211; *City of Utica* v. *Churchill,* 33 N. Y. 237; *Clapp* v. *Astor,* 2 Edw. Ch. 379; *Clarkson* v. *Clarkson,* 18 Barb. 646; *Daland* v. *Williams,* 101 Mass. 571; *In re Gerry,* 103 N. Y. 445; *Gibbons* v. *Mahon,* 136 U. S. 549; *Goldsmith* v. *Swift,* 25 Hun, 201; *Hiscock* v. *Lacy,* 9 Misc. Rep. 578; *Hite* v. *Hite,* 20 S. W. Rep. 778; *Hyatt* v. *Allen,* 56 N. Y. 553; *In re Kernochan,* 104 N. Y. 618; *Knight* v. *Lidford,* 3 Dem. 88; *Leland* v. *Hayden,* 102 Mass. 542; *People ex rel.* v. *Tax Comrs.,* 76 N. Y. 74; *Mills* v. *Britton,* 24 L. R. A. 537; *Minot* v. *Paine,* 99 Mass. 101; *Moss' Appeal,* 83 Penn. St. 264; 2 Perry on Trusts, § 545; *Prime's Estate,* N. Y. L. J. March 6, 1891; *Rand* v. *Hubbell,* 115 Mass. 461; *Riggs* v. *Cragg,* 26 Hun, 89; 89 N. Y. 487; *Simpson* v. *Moore,* 30 Barb. 637; *Spooner* v. *Phillips,* 16 L. R. A. 461; *Sproule* v. *Bouch,* L. R. [29 Ch. Div.] 635; *Thomas* v. *Gregg,* 28 Atl. Rep. 565; *People ex rel.* v. *Barker,* 86 Hun, 131; *Williams* v. *W. U. T. Co.* 93 N. Y. 189; *In re Woodruff,* 1 Tuck. 58.) The trustees are required by law to reserve and retain, as so much principal returned, such portion of the interest paid to them from time to time on the United States securities as will offset the proportionate current wearing away of the said premiums on said securities to the end that at the termination of said trusts at any time the full amount of the principal of said trust estates, as represented and invested in the said United States bonds turned over to or purchased by the said trustees, may duly remain undiminished by such wear of premiums. (*In re Albertson,* 113 N. Y. 435; *Bergen* v. *Valen-*

*tine*, 63 How. Pr. 221; *Burleigh* v. *Center*, 9 J. & S. 441; *Cogswell* v. *Cogswell*, 2 Edw. Ch. 230; *People ex rel.* v. *Davenport*, 30 Hun, 184; 117 N. Y. 549; *Farwell* v. *Tweddle*, 10 Abb. [N. C.] 94; *Fosdick* v. *Delafield*, 2 Redf. 392; *In re Gerry*, 10 Abb. [N. C.] 178; *Hardenberg* v. *Ray*, 151 U. S. 112; *Harvard College* v. *Amory*, 9 Pick. 461; *Hemenway* v. *Hemenway*, 134 Mass. 446; *Hite* v. *Hite*, 20 S. W. Rep. 778; *In re Housman*, 4 Dem. 415; *In re Hutchinson*, N. Y. L. J. Feb. 29, 1892; *In re Keteltas*, 1 Connolly, 468; *King* v. *Talbot*, 40 N. Y. 76; *Lovell* v. *Minott*, 20 Pick. 119; *In re Mason*, 98 N. Y. 534; *In re Shipman*, 82 Hun, 108; *Minott* v. *Thompson*, 106 Mass. 585; *N. E. T. Co.* v. *Eaton*, 140 Mass. 532; 1 Perry on Trusts, 537, 538; 2 Perry on Trusts, 85, 86; *In re Pollock*, 3 Redf. 100; *Pray* v. *Hegeman*, 92 N. Y. 508; Redfield's Surr. Pr. [5th ed.] 504; *Reynal* v. *Thebaud*, 3 Misc. Rep. 187; *Scovell* v. *Roosevelt*, 5 Redf. 121; *Shaw* v. *Cordis*, 143 Mass. 443; *Simpson* v. *Moore*, 30 Barb. 641; *Thurber* v. *Chambers*, 66 N. Y. 48; *Townsend* v. *U. S. T. Co.*, 3 Redf. 220; *Matter of Vowers*, 113 N. Y. 571; *Whitson* v. *Whitson*, 53 N. Y. 482; *Wilcox* v. *Quinby*, 26 N. Y. S. R. 114; *Woodward* v. *James*, 115 N. Y. 360.)

*Charles McLouth, Trustee*, respondent in person. The Western Union stock dividend should be regarded as income. (*In re Kernochan*, 104 N. Y. 618; *Riggs* v. *Cragg*, 89 N. Y. 487; 26 Hun, 90; *Clarkson* v. *Clarkson*, 18 Barb. 646; *Goldsmith* v. *Swift*, 25 Hun, 201; *Hyatt* v. *Allen*, 56 N. Y. 553; *Simpson* v. *Moore*, 30 Barb. 637; *Knight* v. *Ledford*, 3 Dem. 88; *In re Curtis*, 29 N. Y. S. R. 217; *In re Skillman*, 24 Abb. [N. C.] 41–44 : Perry on Trusts [4th ed.], 545; *In re Lawrence*, 26 N. Y. S. R. 238; *In re Hodgman*, 140 N. Y. 421; *Cross* v. *L. I. L. & T. Co.*, 75 Hun, 533; *People ex rel.* v. *Davenport*, 30 Hun, 177; *Hite* v. *Hite*, 20 S. W. Rep. 778; *Earp's Appeal*, 28 Penn. St. 368; *Thomas* v. *Gregg*, 28 Atl. Rep. 565; *Sproule* v. *Bouch*, L. R. [29 Ch. Div.] 635; *In re Woodruff*, 1 Tuck. 58; *In re Warren*, 33 N. Y. S. R. 584; *Wood* v. *Lary*, 47 Hun, 550; *Whitson* v. *Whitson*,

53 N. Y. 479 ; *In re Oliver*, 6 L. R. A. 421 ; *Spooner* v. *Phillips*, 16 L. R. A. 461 ; *Stuart* v. *Brown*, 11 App. Div. 494 ; *Hopper* v. *Sage*, 112 N. Y. 531–533 ; *People ex rel.* v. *Barker*, 86 Hun, 131.) The wear of premiums on the United States bonds should be borne by the *corpus* of the estate. (*White* v. *Hoyt*, 73 N. Y. 505 ; *Kenyon* v. *K. T. & M. M. A. Assn.*, 122 N. Y. 247–254 ; *Stokes* v. *Mackay*, 140 N. Y. 649 ; *Trustees of E. Hampton* v. *Vail*, 151 N. Y. 463 ; *Stuart* v. *Brown*, 11 App. Div. 492 ; *In re Kernochan*, 104 N. Y. 627 ; *In re Clinton*, 12 App. Div. 132 ; *Stimson* v. *Vroman*, 99 N. Y. 79 ; *Niendorff* v. *M. R. Co.*, 150 N. Y. 276 ; *Hopkins* v. *Clark*, 149 N. Y. 329 ; Code Civ. Pro. §§ 190, 191 ; L. 1895, ch. 986, § 5 ; Const. N. Y. art. 6, § 9 ; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219 ; *Orim* v. *Starkweather*, 136 N. Y. 635 ; *Amherst College* v *Ritch*, 151 N. Y. 320 ; *Bergen* v. *Valentine*, 63 How. Pr. 221 ; *Shaw* v. *Cordis*, 143 Mass. 444 ; *Reynal* v. *Thebaud*, 3 Misc. Rep. 190 ; *Shulters* v. *Johnson*, 38 Barb. 80 ; *Stimson* v. *Vroman*, 99 N. Y. 74 ; *Freeman* v. *Coit*, 96 N. Y. 63 ; *Roseboom* v. *Roseboom*, 81 N. Y. 356 ; *Tilden* v. *Green*, 130 N. Y. 29 ; *Sturr* v. *Starr*, 132 N. Y. 154 ; *In re Gerry*, 103 N. Y. 449 ; *In re Lewis*, 3 Misc. Rep. 164 ; *Greer* v. *Chester*, 62 Hun, 329 ; *Burleigh* v. *Center*, 9 J. & S. 441 ; *Hemenway* v. *Hemenway*, 134 Mass. 446 ; *N. E. T. Co.* v. *Eaton*, 140 Mass. 532, 542, 543 ; *Knight* v. *Lidford*, 3 Dem. 90, 91 ; *In re Porter*, 5 Misc. Rep. 274 ; *Farrell* v. *Tweddle*, 10 Abb. [N. C.] 94 ; *Duclos* v. *Benner*, 62 Hun, 435 ; *Hite* v. *Hite*, 19 L. R. A. 173 ; *In re Jones*, 19 N. Y. S. R. 436.)

*S. N. Sawyer* for Carlton C. M. Hunt, respondent. Plaintiffs are not authorized or required by law to set aside and retain as a part of the *corpus* of the estate from the interest received upon the government bonds an amount sufficient to offset the wearing away of the market premiums. (Const. N. Y. art. 6, § 9 ; *Niendorff* v. *M. R. Co.*, 150 N. Y. 276 ; *Masterson* v. *Townshend*, 123 N. Y. 458 ; *Whitney* v. *Whitney*, 63 Hun, 59 ; *Woodward* v. *James*, 115 N. Y. 346 ; *Cahill*

v. *Russell*, 140 N. Y. 402; *Riggs* v. *Cragg*, 26 Hun, 95; *In re Lapham*, 37 Hun, 15; *In re Vowers*, 113 N. Y. 569; *In re McAlpine*, 126 N. Y. 290; *Simpson* v. *Moore*, 30 Barb. 637; *In re Gerry*, 103 N. Y. 445; *In re Pollock*, 3 Redf. 100; *Townsend* v. *Trust Co.*, 3 Redf. 220; *Scovell* v. *Roosevelt*, 5 Redf. 121; *Wilcox* v. *Quinby*, 73 Hun, 524; *Farrell* v. *Tweddle*, 10 Abb. [N. C.] 94; *People ex rel.* v. *Davenport*, 117 N. Y. 579; 30 Hun, 177; *Bergen* v. *Valentine*, 63 How. Pr. 221; *Reynal* v. *Thebaud*, 3 Misc. Rep. 187; *Shaw* v. *Cordis*, 143 Mass. 442.) The twenty-five and four-tenths shares of Western Union Telegraph stock received by the trustees for stock dividends are not properly a part of the *corpus* of the estate. They should be treated as income and distributed to these defendants. (*Clarkson* v. *Clarkson*, 18 Barb. 646; *Simpson* v. *Moore*, 30 Barb. 637; *Goldsmith* v. *Swift*, 25 Hun, 201; *Riggs* v. *Cragg*, 26 Hun, 90; 89 N. Y. 487; *Hyatt* v. *Allen*, 56 N. Y. 553; *In re Kernochan*, 104 N. Y. 618; *Knight* v. *Bidford*, 3 Dem. 88; *In re Woodruff*, 1 Tuck. 58.)

*William H. Shuart* and *Joseph A. Adlington* for George C. Hunt et al., respondents. The stock dividend of twenty-five and four-tenths shares of stock of the Western Union Telegraph Company is income, and should be turned over to the beneficiaries now, and should not be retained as a part of the principal of the trust estate which they are not to receive until they respectively become thirty-five years of age. (*Riggs* v. *Cragg*, 89 N. Y. 487; 1 Cook on Stocks, etc., §§ 552–557; 1 Spelling on Priv. Corp. § 457; *Williams* v. *W. U. T. Co.*, 93 N. Y. 162; *Earp's Appeal*, 28 Penn. St. 374; *Moss' Appeal*, 83 Penn. St. 269; *Sproule* v. *Bouch*, L. R. [29 Ch. Div.] 639; *Hurd* v. *Eldridge*, 109 Mass. 260; *Hite* v. *Hite*, 93 Ky. 265; *Brander* v. *Brander*, 4 Vesey, 800; *Irving* v. *Houston*, 4 Paton Sc. App. 521; *Paris* v. *Paris*, 10 Vesey, 184; *In re Barton*, L. R. [5 Eq. Cas.] 238; *Minot* v. *Paine*, 99 Mass. 101; *Deland* v. *Williams*, 101 Mass. 571; *Leland* v. *Hayden*, 102 Mass. 542; *Rand* v. *Hubbell*, 115 Mass. 461;

*Davis* v. *Jackson*, 152 Mass. 58 ; *Gibbons* v. *Mahon*, 136 U. S. 549 ; *Thomas* v. *Gregg*, 78 Md. 545.) The loss, if any, from the wearing away of the premiums on United States bonds, should be borne by the *corpus* of the trust fund. (L. 1887, ch. 65 ; *Reynal* v. *Thebaud*, 3 Misc. Rep. 187 ; *Peckham* v. *Newton*, 15 R. I. 322 ; Redf. Surr. Pr. [5th ed.] 509 ; *Bergen* v. *Valentine*, 63 How. Pr. 221 ; *In re Pollock*, 3 Redf. 100 ; *Shaw* v. *Cordis*, 143 Mass. 446 ; *Hemenway* v. *Hemenway*, 134 Mass. 446 ; *Hite* v̇. *Hite*, 93 Ky. 257 ; *Whittemore* v. *Beekman*, 2 Dem. 276 ; *In re Furness*, 12 Phil. Rep. 130 ; *Meyer* v. *Simonson*, 5 DeG. & S. 723.)

O'Brien, J. This was an action to procure a judicial construction of the provisions of a will, and incidentally for an accounting by the trustees of a testamentary trust. Caroline Cuyler died on the 18th day of September, 1888, leaving a will with two codicils, which were admitted to probate. The plaintiffs are the executors of the will and trustees under the trust created thereby. The testatrix, after making various general and specific bequests and devises to collateral relatives, friends and institutions of charity, disposed of the residue of her estate in trust, for the benefit of three grandchildren named therein.

The questions involved here relate wholly to the administration of the trust by the trustees and to the distribution of the fund between the parties respectively entitled thereto. The trust provision is as follows :

" After the payment of the above legacies, and any debts which I may owe, and the proper expenses of settling my estate, all of the rest, residue and remainder of my estate of every kind, I give, devise and bequeath in three equal parts to my executors in and upon three several, separate and independent trusts, and in trust as follows, to-wit :

" That they take, receive, hold, care for, preserve, maintain, invest and re-invest, convert, sell, lease and collect the same in all things as in their discretion may seem advantageous for the benefit, respectively, of my said three grandsons, George Cuy-

24

ler Hunt, Samuel Hall Hunt and Carlton Charles McLouth Hunt, as follows :

" That my executors pay over to the use and benefit of each of my said grandsons, respectively, during their or his minority such portion of the income of said three parts for their support, maintenance or education as in the discretion of my executors may seem proper.

" That from and after the arrival at age of my said grandsons respectively, that my said executors pay over to each of them, respectively, annually from their arriving at age the full income of one of said three parts.

" That my executors pay over to each of my said grandsons, respectively, on his arriving at the age of thirty-five (35) years the full amount of one of said three parts, together with any accumulation thereupon which may remain.

" In case of the death of one of my said grandsons, prior to his arriving at the age of thirty-five (35) years, I direct that my executors shall pay over his share, being one of said three parts, to his descendants, if any. If none, then that the same shall remain in trust, as above written, for his surviving brothers, my two remaining grandsons.

" In case of the death of the second of my said grandsons, prior to his arriving at the age of thirty-five (35) years, I direct that my executors shall pay over his share, being one of said three parts, to his descendants, if any. If none, then his original part or third, as above written, shall remain in trust, as above written, for his remaining brother, my surviving grandson, but the portion or share so received or inherited by said second of my grandsons dying from the share of his prior deceased brother shall be paid to such surviving brother, my remaining grandson."

The executors and trustees duly qualified and took charge of the whole estate. On December 1, 1890, the surrogate having jurisdiction, by an order made on that day, directed the trustees to set aside and retain, for the purposes of the trusts, certain personal property belonging to the estate, including $95,000, par value, of United States six per cent

bonds, valued at a premium of 28 per cent, or at $121,600. Also $12,000, par value, of United States four per cent bonds, at the same premium, inventoried and valued at $15,360. The six per cent bonds will mature in 1898 and the four per cent bonds in 1907. There was also included in the trust, under the same directions, 254 shares of the capital stock of the Western Union Telegraph Company, upon which the trustees received a stock dividend of ten per cent on the 10th day of November, 1892, represented by certificates issued to them for twenty-five and four-tenths additional shares. This dividend was declared upon the surplus earnings of the corporation.

It appears that in the administration of this trust a difference of opinion arose between the two trustees with respect to their duties, and with respect to the distribution of certain items claimed by the one to be income and by the other to be capital. It was for the purpose of adjusting this dispute in an amicable spirit that this action was brought to obtain a construction of the will and a direction to the trustees with respect to their duties and obligations. The trustees are the sole plaintiffs, and the three grandchildren named in the trust provisions the only defendants. The defendants answered the complaint, setting forth what they claimed to be their rights under the will and the duties of the trustees with respect to the trust estate. The action being at issue it was referred to a referee for trial, and as an incident of the litigation a full accounting on the part of the trustees was had, which shows the sums paid out under the directions of the trust and the fund which still remains in their hands.

It will be seen from the terms of the will creating the trust in question that there is a contingent remainder in favor of descendants or great grandchildren born before the grandchildren arrived at the age of thirty-five years; but in case the latter arrived at that age without children, then they are to take the whole *corpus* of the estate. The grandchildren are now all living without children, and one of them is within a few months of the age specified. The other two will arrive at that age within the next four years. So that the only practi-

cal importance of this controversy, aside from the interesting nature of the questions involved, arises from the possibility that children may be born to some of them before they have reached the age designated in the will for the final termination of the trust and the distribution of the fund. The grandchildren, as the immediate beneficiaries of the trust, are entirely satisfied with the decision of the questions as rendered by the courts below, and none of them have appealed from the judgment. In case the grandchildren had now arrived at the age designated in the will without issue when they are to become the absolute owners of the whole fund, the case would present little more than an academical question, in which the trustees had no legal interest sufficient to warrant an appeal to this court. (*Bryant* v. *Thompson,* 128 N. Y. 426.) But as there is still a possibility that the contingencies contemplated by the will upon which the remainders to the immediate beneficiaries may be defeated, will happen, the questions raised must be met and decided.

In discussing these questions it will be more convenient to consider the grandchildren, before reaching the age of thirty-five, as life tenants, and after arriving at that age as remaindermen, although such a classification may not be strictly accurate. The case is obviously governed by the same rules and principles that prevail in the determination of legal questions between the owner of an estate for life and the owner of an estate in the same property in remainder, and the analogy is so perfect that we may adopt it in order to avoid confusion of terms and to bring the discussion within the language of the authorities cited, and which are conceded to have more or less application to the case. We have seen that the controversy is wholly between the plaintiffs themselves as trustees. Their respective claims and contentions are as follows :

Mr. Sexton, one of the trustees, contends :

(1) That in the administration and distribution of the trust estate the life tenants are not entitled to the full interest on the United States bonds, but that there should be deducted therefrom and retained by the trustees for investment a pro-

gressively increasing sum in each year to meet what is called the wearing away of the premium, to the end that the remaindermen may receive them at the termination of the trust intact, without diminution in value in consequence of the fact that they have matured or are approaching maturity, when, of course, the premium must disappear altogether. In other words, that the expense of the premiums on the United States bonds must be borne by the life tenants and not by the tenants in remainder.

(2) That the stock dividends upon the Western Union stock was not income payable to the life tenants, but an accession to the capital which goes to the remaindermen.

Mr. McLouth, one of the trustees, and the three grandchildren defendants, on the other hand, insist upon just the contrary of these two propositions, and in their contention they have been sustained by the courts below.

At least one, if not both of these questions, have been the subject of discussion in the courts of this country and England for a century. The decisions, though numerous, are singularly conflicting and unsatisfactory. It is not necessary in the disposition of this case to review them or to attempt to reconcile the conflict, even if that were possible. The whole subject has been in recent years carefully examined and elaborately discussed in the courts of this country, and, while the conflict still exists, it is possible, from a study of the decisions and a careful consideration of the peculiar facts and circumstances of this case, to arrive at a conclusion which will be equitable and just and will have the support substantially of the more recent authorities upon the questions, as expressed in judicial decisions and by text writers.

Notwithstanding the conflict of authority to which I have just referred, there is one principle or rule applicable to this case, with respect to which the parties are all at agreement, and that is that the questions are not to be determined by any arbitrary rule, but by ascertaining, when that can be done, the meaning and intention of the testatrix, to be derived from the language employed in the creation of the trust, from the rela-

tions of the parties to each other, their condition and all the surrounding facts and circumstances of the case.

With respect to the question as to which estate the premium upon the bonds is to be charged, the courts below have disposed of that by an application of this rule, and, in reviewing their decision, it is important to keep in view some facts as to which there is no dispute, viz. :

(1) That the bonds in question, except $5,000, were purchased by the testatrix during her lifetime, or came to her by will, and were transmitted as she held them to the plaintiffs.

(2) That the direction in the will is that the life tenants shall receive the full income.

(3) That the trustees placed and retained these bonds in the trust as a part of the capital of the fund by the direction of the surrogate who had jurisdiction, a direction which they were not at liberty to disobey any more than if the testatrix herself had specifically designated them as a part of the trust fund. Upon a consideration of all the circumstances of the case, the learned referee held that it was the intention of the testatrix, in making the trust provision, that the decrease in the value of the securities by the lessening or wearing away of premiums on account of the bonds reaching maturity, should be borne by the *corpus* of the estate, and not presently by the defendants, and that the defendants were entitled to receive the whole of the current annual income of the estate, less expenses and commissions, as provided by the surrogate's decree under which the trust was erected.

It is said that the intention of the testatrix, with respect to the amounts which the beneficiaries were to receive as income from the earnings of the fund and expressed by the words " full income," was a question of fact to be determined not only from the language employed, but from the conditions and relations of the parties and all the circumstances of the case. Whether that is so or not, we think that when the testatrix directed that her grandchildren should receive the whole income of these securities she must have intended the full interest payable thereon, without diminution by reserv-

ing a considerable portion of it for the purpose of meeting any depreciation in the market value of the bonds due to the fact that they were approaching maturity. Whatever meaning the words "full income" may convey to the mind of a trained expert in finance, it cannot, we think, be doubted that the common mind must always understand such a direction in a will as meaning the annual interest upon securities. To give to her words now an artificial meaning, based even upon scientific theories, would be to subvert her intentions and to take from the objects of her bounty a considerable portion of the money which she intended that they should receive. The thought that was in the mind of the testatrix with respect to her grandchildren, and the provision necessary for their support and maintenance, should be carried out. There seems to be no reason to believe that she intended that they should receive any less than the interest.

But quite apart from these considerations, it is said that upon principle and the great weight of authority, the decision of the learned referee was right. Since the investment must be unquestionably safe in order to preserve the capital as well as to secure income, the premium is paid for the benefit of the remainderman as well as the life tenant. The absolute security of government bonds, both to the life tenant and the remainderman, must always be kept in view. They may be purchased at a premium and sold at a still higher one, in which case, if there is a deduction made from the interest and added to the principal to balance the premium, the remainderman will be doubly benefited. Some investments will increase, while others will diminish in value. When all things are considered, the better rule, it is urged, is to allow these matters to balance themselves, as, on the whole, they are quite likely to in the end. The arguments against charging the life tenant in such cases with the premiums have thus been elaborated at great length in many of the adjudged cases. (*Hite* v. *Hite*, 93 Ky. 257; *Peckham* v. *Newton*, 15 R. I. 322; 33 Albany Law Journal, 424; *Bergen* v. *Valentine*, 63 How. Pr. 221; *In re Pollock*, 3 Redf. 100, 118;

*Shaw* v. *Cordis,* 143 Mass. 443; *Hemenway* v. *Hemenway,* 134 Mass. 446; *Whittemore* v. *Beekman,* 2 Dem. 276; *Furness's Estate,* 12 Phila. R. 130; *Meyer* v. *Simonsen,* 5 De Gex & Smale, 723.)

The authorities cited in support of the appeal on this point and which it is claimed establish the contrary rule are: *Farwell* v. *Tweddle* (10 Abb. N. C. 94); *People ex rel. Cornell University* v. *Davenport* (30 Hun, 177; reversed, 117 N. Y. 549); *New England Trust Co.* v. *Eaton* (140 Mass. 532); *Reynal* v. *Thebaud* (3 Misc. Rep. 187); *N. Y. Life Ins. & T. Co.* v. *Kane* (17 App. Div. 542). We think the court below properly held that the premium upon the bonds could not be charged to the life tenants. Without attempting to show upon which side of the controversy the weight of reason and authority is, the intention of the testatrix as expressed in the will must prevail.

There were $5,000 of the United States bonds purchased by the trustees after the erection of the trust at the same premium. There may be reasons for charging the life tenants with the premium on these bonds that do not apply to the others. But that item is so insignificant that it does not play any part in the controversy. All questions as to the premiums on these bonds were virtually waived on the argument, and we decide nothing as to which party, the life tenant or remainderman, should bear the loss occasioned by the wearing away of the premium. It was admitted at the argument that the parties themselves could adjust that part of the controversy.

With respect to the stock dividends upon the stock of the Western Union Telegraph Company, embraced in the trust, it is important to notice the finding of the referee. For the purposes of the case the parties stipulated, and the referee found, that in the fall of 1892 the Western Union Telegraph Company, by a capitalization of accumulated earnings made and retained in its hands, from time to time, increased its capital stock from $86,200,000 to $100,000,000, and predicated thereon made a stock dividend of ten per cent to its stock-

holders, under which the plaintiffs received in December of that year from the corporation a certificate for twenty-five and four-tenths additional shares of stock, making, with the 254 shares previously held by them, 279 4-10 shares.

There is doubtless much stronger and more weighty author- ity to support the contention of the appellant with respect to this question than the one just considered. We will not attempt any extended or critical analysis of the numerous cases in which the question whether such a dividend is to be treated as capital or income has been discussed and decided. It would enlarge the scope of the discussion beyond all reasonable limits, and in the end answer no useful purpose. It is quite sufficient to say that they are in hopeless conflict, though, as it seems to us, the general trend of the more recent ones, as well as the weight of argument and reason, sustain the decision in this case. With respect to this question the appeal is sought to be sustained, first, by a class of cases in England founded upon *Brander. v. Brander* (4 Vesey, 800), and followed by *Irving* v. *Houstoun* (4 Paton Sch. Ap. 521) ; *Paris* v. *Paris* (10 Vesey, 184), and *In re Barton* (L. R. [5 Equity Cases], 238).

Apart from the evident inclination of the judicial mind at that day in that country to favor entails, perpetuities and accumulations of property, it can hardly be said that these cases were well considered. Lord Chancellor Eldon admitted this in *Paris* v. *Paris* (*supra*), where he said : "I confess I do not think I can safely rest upon any distinction between this case and those that have been determined. I have had great difficulty in stating the principle that led to them. But in the case from Scotland great inquiry was made as to the length to which practice had carried the decisions here and at the rolls ; and, as it appeared that it had gone to great length, the house of lords did not think it proper to disturb them." Then proceeding to notice the argument now made in this case, that there is a distinction between stock and cash dividends, he disposed of that contention with a homely but expressive remark. He said : " As to the distinction between stock and money, that is too thin ; and if the law is, that this extraordi-

nary profit, if given in the shape of stock, shall be considered capital, it must be capital if given as money."

The rule as thus established in England was followed in Massachusetts, more as one of convenience than of justice, in a line of cases that are not quite consistent with each other. (*Minot* v. *Paine*, 99 Mass. 101; *Daland* v. *Williams*, 101 Mass. 571; *Leland* v. *Hayden*, 102 Mass. 542; *Heard* v. *Eldredge*, 109 Mass. 258; *Rand* v. *Hubbell*, 115 Mass. 461; *Davis* v. *Jackson*, 152 Mass. 58.) The rule was adopted there mainly upon the authority of the early English cases to which reference has been made.

The Supreme Court of the United States laid down the same rule in *Gibbons* v. *Mahon* (136 U. S. 549), evidently following the doctrine of the English and Massachusetts cases. Mr. Justice GRAY, who delivered the opinion, was a member of the Supreme Court of Massachusetts when the rule was established in that state. It cannot be doubted that these cases are authority in support of the appellant's contention, and yet, notwithstanding the exalted character of the courts from which they proceed, they are not binding upon us, except in so far as they appear to be founded upon reason and justice. We have recently had occasion to declare the extent to which we are bound by the decisions of even such a great tribunal as the Supreme Court of the United States, and the weight to be given to its judgments upon such questions of general law as we are now considering. (*Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 24.) Moreover, it is by no means clear that the decision in this case is in conflict with the case of *Gibbons* v. *Mahon* (*supra.*) The rule for the determination of the question whether stock dividends were to be treated as income or an apportionment of capital, was stated by the learned justice in the following language: "When a distribution of earnings is made by a corporation among its stockholders, the question whether such distribution is an apportionment of additional stock representing capital, or a division of profits and income, depends upon the substance and intent of the action of the corporation as manifested by its vote or resolution." In this

case the resolution recites that the earnings of the corporation had been withheld from the shareholders for almost ten years ; that they had accumulated, and that it was the intention of the directors in taking such action, and the shareholders in consenting to it, to distribute such accumulated earnings to the shareholders in the form of stock certificates instead of money. It was, therefore, the substance and intent of the corporate action to distribute earnings rather than apportion additional capital.   There was, in fact, no additional capital added. The capital of a corporation is the money or property that it has after deducting its debts.   The Western Union Telegraph Company had no more property after passing this resolution than it had before, and, hence, no more capital.   When the resolution was carried out it had, indeed, more capital stock outstanding, as represented by certificates, but not a single dollar had been added to its capital.   It had nothing after passing the resolution that it did not have before.   So that, within the rule stated by the learned justice, what the shareholder got in this case represented income and was income. When the substance of the transaction is analyzed, it will be seen that what the corporation really did was to issue to the shareholders its own obligations in the form of stock certificates against the accumulated earnings which it had on hand, and these certificates having a market value could readily be converted into money by the shareholders.   So that the transaction was, in substance, a distribution of profits.

In *Riggs* v. *Cragg* (89 N. Y. 487) it was said by Chief Judge ANDREWS : " The right to stock dividends as between tenant for life and remainderman, has not been considered by the court of last resort in this state.   The decisions upon the subject in other states and in England are conflicting, and it will be the duty of this court, when occasion arises, to seek to settle the question upon principle, and establish a practical rule for the guidance of trustees and others, which shall be just and equitable as between the beneficiaries of the two estates."   This statement, with respect to the attitude of this court upon the question, was doubtless correct.   But since this

utterance was made, cases have been decided in this court which it will be found exceedingly difficult to reconcile with the doctrine of the early English cases and those of Massachusetts. (*In re Kernochan*, 104 N. Y. 618; *In re Gerry*, 103 N. Y. 451; *Monson* v. *N. Y. Sec. and Tr. Co.*, 140 N. Y. 498; *In re Dewey*, 153 N. Y. 63.)

In so far as this court has touched the question at all since the decision in *Riggs* v. *Cragg*, nothing certainly can be found in the cases to sustain the contention of the appellant. The question had, however, been passed upon in the Supreme Court, upon full consideration, and the doctrine of the English cases and those of Massachusetts had been repudiated. (*Clarkson* v. *Clarkson*, 18 Barb. 646; *Riggs* v. *Cragg*, 26 Hun, 90; *Simpson* v. *Moore*, 30 Barb. 637; *Goldsmith* v. *Swift*, 25 Hun, 201.)

The same may be said with respect to the action of the Supreme Court of Pennsylvania, where it has been held that a stock dividend represented income, and belonged to the life tenant. (*Earp's Appeal*, 28 Pa. St. 368; *Moss' Appeal*, 83 Pa. St. 264.) In the latter case it was said: "Where a corporation having actually made profits, proceeds to distribute such profits amongst the stockholders, the tenant for life would be entitled to receive them, and this without regard to the form of the transaction. Equity, which disregards form and grasps the substance, would award the thing distributed, whether stocks or moneys, to whomsoever was entitled to the profits." The same rule was declared in New Jersey and New Hampshire. (*Van Doren* v. *Olden*, 19 N. J. Eq. 176; *Lord* v. *Brooks*, 52 N. H. 72.) There are other cases in these states to the same effect, but it is not necessary to refer to them. It is sufficient to say that in all of them the court refused to follow what is called the English and Massachusetts doctrine, for reasons that are stated at length, and which seem to be of great if not convincing force.

There are three very recent cases where the whole question has been carefully examined and the leading authorities critically reviewed by the highest courts in other states.

These cases are *Hite* v. *Hite* (93 Ky. 257 [1892]); *Thomas* v. *Gregg* (78 Md. 545 [1894]); *Pritchitt* v. *Nashville Trust Co.* (96 Tenn. 472 [1896]). In each of these cases the court was entirely unembarrassed by any previous impressions or decisions. The question was new, and from the conflict of authority in other jurisdictions the courts, with admirable judgment and discrimination, proceeded to determine the question upon principle. It was held in each case that stock dividends, such as the one now under consideration, represented income, and in justice and equity properly belonged to the life tenant.

The reasoning of these cases seems to us far more cogent and persuasive than anything to be found in the cases which favor the contrary rule that a stock dividend, such as was made to the trustees in this case, is an apportionment of capital and not income. It is impossible to read the English cases without being impressed with the statement of the judges, so often repeated, that they found great difficulty in formulating any principle upon which the decisions rested. An attempt to give a reason for the rule was made in one of the more recent cases, but without much success. (*Sproule* v. *Bouch*, L. R. [29 Ch. Div.] 638–653.) It was all summed up in the end by the court in a single sentence : "What the company says is income shall be income, and what it says is capital shall be capital." This is but another way of saying that whether accumulated earnings belong to the life tenant or the remainderman, depends upon the action of the corporation, and that the property rights of such parties under the will are governed by the mere form of capitalization ; that the majority of a board of directors may give them to one or the other at their will. While such a rule might have the merit of simplicity and convenience, it ought not to determine the property rights of parties interested in the corporate property.

That a testamentary provision of this character, for the benefit of both the life tenant and the remainderman, who are generally the nearest and dearest objects of the testator's bounty, can in this way be voted up or down, increased or diminished, as the corporation may elect, and that such action

precludes the courts from looking into the real nature and substance of the transaction, and adjusting the rights of the parties according to justice and equity, is a proposition that cannot be accepted. The mere adoption by the corporation of a resolution cannot change accumulated earnings into capital, as between the life tenant and remainderman.

When questions arise under a will between parties standing in such relations to each other, with respect to the right to accumulated earnings upon capital stock, the courts must determine the questions for themselves, according to the nature and substance of the thing which the corporation has assumed to transfer from the one to the other, and they are not concluded by mere names or forms. For all corporate purposes the corporation may doubtless convert earnings into capital, when such power is conferred by its charter, but when a question arises between life tenants and remaindermen concerning the ownership of the earnings thus converted the action of the corporation will not conclude the courts.

The decision of the learned referee in awarding the stock dividend to the life tenants as earnings or income, and in refusing to charge them with the premium upon the bonds, or that part of it that has disappeared by the lapse of time, is equitable and just, and, we think, is supported by reason and authority.

The judgment should, therefore, be affirmed, with costs to all parties payable out of the income of the fund.

All concur.

Judgment affirmed.