---

### In re HOYT et al.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

1. TRUSTS—RIGHTS OF LIFE TENANT AND REMAINDER-MAN.

Where a trustee invests in government bonds, the question whether a depreciation, due to their approaching maturity, of the premium thereon, should be borne by the life beneficiary or the remainder-men, is to be determined, not by any arbitrary rule, but by ascertaining the meaning and intention of the testator, to be derived from the language employed in the creation of the trust, from the relation of the parties to each other, their conditions, and all the surrounding facts and circumstances of the case.

2. SAME—SINKING FUND—SHRINKAGE IN SECURITIES.

Where, in such a case, it is clear that the testator intended that the corpus of the trust fund should be preserved, and that the total amount thereof, or its equivalent in securities, should be turned over to the remainder-men at the termination of the trust, the proper course is to annually retain from the interest derived from bonds purchased at a premium a sum equivalent to the proportionate wearing away of the value of the securities, for the purpose of forming a sinking fund.

Appeal from surrogate's court, New York county.

In the matter of the final judicial settlement of the annual accounts of Samuel N. Hoyt and others, trustees under the will of Jesse Hoyt. From a decree of the surrogate court the trustees and others interested appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

William H. Rand, for appellants.

William F. Moore, for respondent.

McLAUGHLIN, J. On the 14th of August, 1882, Jesse Hoyt died, leaving a last will and testament, which was, on the 29th of the same month, admitted to probate, and letters testamentary issued to the executors therein named, who qualified, and have since continued to act as such. The testator gave to his executors $1,250,000 in trust during the life of his daughter, Mary Irene Hoyt, the respondent herein. That portion of the will creating this trust reads as follows:

"It is my will, and I hereby direct, that the sum of one million two hundred and fifty thousand dollars shall be appropriated and received from my estate, real and personal, wheresoever situated, or from the proceeds thereof, by such of my executors hereinafter named as reside or do business in the state of New York, or to whom the letters testamentary on this, my will, shall be granted by any surrogate in said state of New York, and as soon as it can or shall be realized or received by such executors, and held in trust by them and the survivors of them, and their successor or successors to the trust, to and for the use and benefit of my daughter, Mary Irene Hoyt, for and during her natural life; and in the meantime, during such, her life, to invest and reinvest and keep the same invested, and to collect and receive the interest, dividends, and income therefrom, and from each and every part thereof, and to apply to her use for and during her natural life, in the most bounteous and liberal manner as to expenditure, and so as to promote her convenience and comfort, and gratify her reasonable desires; the said interest, dividends, and income so to be collected and received as the same shall be required for her use and benefit. And it is further my will that the said sum of money hereabove in this article directed to be appropriated and held in trust for and during the natural life of my daughter, Mary Irene, and for her use as above herein provided as to the interest, dividends, and income therefrom, or the securities in which the same shall be invested, and any surplus of income therefrom, if any, which shall not have been applied to her use during her natural life, shall, on the death of my said daughter, go and be distributed to and among my nephews and nieces, children of my brothers, Alfred M. Hoyt, Reuben Hoyt, and James H. Hoyt, who shall be living at the time of the decease of my said daughter, in equal portions."

Owing to the contest over the will the trust created by the provision of it just quoted was not, in fact, established until October, 1886, when the trustees invested the $1,250,000 specified in securities authorized by the eleventh paragraph of the will. The securities, mostly United States government bonds, could only be purchased at a premium. The premium which they paid amounted to $245,000, and to restore and make good this sum they thereafter annually retained from the interest or income a sum equivalent to the proportionate wearing away of the value of the securities for the purpose of creating what is termed in their accounts a "sinking fund." No objection was made to the creation of this fund until the trustees filed their account covering the period from August 14, 1894, to August 14, 1895, when the respondent objected to the retention by them for such purpose of the sum of $8,039.50. A referee was appointed, who reported that the trustees were justified in withholding that sum for the purpose specified. To this report an exception was filed by Miss Hoyt, which was sustained by the surrogate, and a decree entered to the effect that the trustees had no right to withhold such sum for the purpose of creating a sinking

fund because the same belonged to the respondent. From this decree the trustees and all the other persons interested in the fund, except Miss Hoyt, appealed.

The question, therefore, presented for our determination is whether the depreciation, by reason of approaching maturity of the securities purchased, of the premium paid, shall be borne by the life tenant or by the remainder-men. The determination of this question depends entirely upon what the testator intended in that respect. McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548. Did he intend that the whole income from securities purchased with the trust fund, without any deductions whatever, should be paid to his daughter, Mary Irene, during her life? Or did he intend that the corpus of the trust fund should be preserved, and that the said sum of $1,250,000, or its equivalent in securities, should be turned over to his nephews and nieces at the termination of the trust? After a careful consideration of the will of the deceased, and especially the fourth item of it, it seems to us but one answer can be given to the questions proposed. The testator did not intend that any portion of the $1,250,000 should go or be given to his daughter. This sum he intended for his nephews and nieces. It will be observed that he did not intend that the whole of the interest, income, or dividends, received from the trust fund, should belong or necessarily be paid to his daughter, without deductions therefrom, since he left it to the discretion of his trustees to determine how much of such income should be paid to her, and provided that any surplus which might remain upon her death should go to his nephews and nieces, and be distributed in the same manner as the fund itself. It matters not what may be said as to the validity of this provision of the will; it unquestionably indicates that the testator did not intend that his daughter should have the right to receive the entire income of the trust estate, much less any portion of the principal. It may be conceded, for the purpose of disposing of the question presented, that this provision of the will is invalid, since it creates an unlawful accumulation of income. It nevertheless may be resorted to and considered for the purpose of ascertaining the intention of the testator concerning the subject under consideration, and for that purpose it is just as effectual as though valid. Van Nostrand v. Moore, 52 N. Y. 21; Kiah v. Grenier, 56 N. Y. 220; Martin v. Pine, 79 Hun, 426, 29 N. Y. Supp. 995. It cannot, we think, be seriously questioned that it was the intent of the testator that the trust fund, $1,250,000, or securities equivalent to that sum, upon the death of his daughter, should be turned over to his nephews and nieces. If we are correct in this conclusion, then it necessarily follows that the trustees under this will not only had the right, but it was their duty, to withhold, for the purpose of creating a sinking fund to make good the premium paid, the amount which they did. Farwell v. Tweddle, 10 Abb. N. C. 94; Reynal v. Thebaud, 3 Misc. Rep. 187, 23 N. Y. Supp. 615; Trust Co. v. Eaton, 140 Mass. 532, 4 N. E. 69; Stevens v. Melcher, 152 N. Y. 560, 46 N. E. 965; Trust Co. v. Kane, 17 App. Div. 542, 45 N. Y. Supp. 543; McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548. In McLouth v. Hunt, supra, the court of appeals held that the question whether a depreciation through approaching maturity of the premium upon government

50 N.Y.S.—40

bonds should be borne by the life tenant or the remainder-men was to be determined, not by any arbitrary rule, but by ascertaining "the meaning and intention of the testatrix to be derived from the language employed in the creation of the trust, from the relation of the parties to each other, their conditions, and all of the surrounding facts and circumstances of the case." Applying this rule to the facts presented by the record before us, it is impossible to reach a conclusion other than the one already indicated.

It follows that the decision of the learned referee was right, and therefore so much of the decree appealed from should be reversed, with costs to appellant, and the proceeding remitted to the surrogate to enter a proper decree in accordance with this opinion. All concur.