Lang's Executor *v.* Lang.

HENRY LANG'S EXECUTOR

*v.*

WILLIAM F. LANG et al.

[Filed April 28th, 1898.]

1. Where the income of a fund invested in shares of a corporation is bequeathed to one for life, remainder over to another, the remainderman is entitled to the actual value of the shares, including accumulated surplus or undivided earnings at the time of testator's death, which forms a capital, the income of which, whether in the nature of dividends or otherwise, belongs to the life tenant from that time.

2. A testator's son was entitled, under the will, to the income of a fund invested in shares of a corporation, which testator directed to be sold to the best advantage, and otherwise invested, after his death; and this was not and could not be done until dividends had been declared upon the stock.—*Held,* that the direction did not require an immediate sale, and that the stock should be treated as a legal investment pending the conversion, and the declared dividends as income, to which the son was entitled as life tenant.

On final hearing on bill, answer, replication, exceptions to report of Hon. Frederic Adams, master, and further proofs.

*Messrs. Guild & Lum,* for the complainant.

*Mr. Charles A. Reed,* for the defendant William Lang.

*Mr. Sherrerd Depue,* for the infant defendants.

EMERY, V. C.

This bill is filed by an executor and trustee for directions as to the disposition of money in his hands, paid to him as a dividend, declared after the death of testator, upon shares of stock owned by the testator at the time of his death. The testator died February 18th, 1896, and owned at the time of his death six hundred and thirty shares (out of one thousand five hundred total paid-up shares) in the Henry Lang Company, a manufacturing company organized in 1892 by the testator and others, with an original paid-up capital of $101,000, which capital was increased to $150,000 by a stock dividend of $49,000, declared in January, 1896, previous to testator's death. The testator received his proportion of the stock dividend, so that the entire holdings at his death were six hundred and thirty shares. On July 1st, 1896, the company declared a dividend of forty per cent. in cash, being $25,200, on the six hundred and thirty shares, and this dividend has been paid to the executor, who holds it as part of the residuary estate of testator under a trust (in substance) to pay the income (after certain deductions) to the defendant William Lang during his life, and, on his death, to convey the principal to his children, the infant defendants.

The question raised in the case is whether this cash dividend received after testator's death is principal to be held by the executor for the benefit of the remaindermen, or income to be paid to the life tenant. The general rule applicable in such cases was settled in this court by Chancellor Zabriskie in *Van Doren* v. *Olden, 4 C. E. Gr. 176 (1868)*, where he adopted the rule sometimes called the Pennsylvania rule, as first settled in *Earp's Appeal, 28 Pa. St. 368*. This rule, as stated by the chancellor, is (at *p. 179*) "that where trust funds, of which the income, interest or profits are given to one person for life, and the principal bequeathed over upon the death of the life tenant, are invested either by the trustees, or, at the death of the testator, in stock or shares of an incorporated company, the value of which consists in part of an accumulated surplus or undivided earnings laid up by the company, as is frequently the case, such additional value is part of the capital; that this, as well as the

par value of the shares, must be kept by the trustee intact for the benefit of the remainderman; but the earnings on such capital, as well as upon the par value of the shares, belong to the life tenant."

I understand this principle or rule to mean that the actual value of the shares at the time of the death of the testator, so far as the same can be ascertained, is the capital or principal intended by the testator for the remaindermen. This value at testator's death is evidenced in part by the book assets, including the accumulated surplus account standing on the books at that time, and in cases where the stock has a market value (as in *Earp's Case*) this also is evidence of value. "It is the intrinsic value of the shares to be ascertained from the amount and value of the assets at the death of the testator, and at the time of the increase of stock, which governs in the apportionment of the surplus profits. The market value may aid in the ascertainment of the actual value, and is, therefore, properly received in evidence on that issue." *Appeal of Smith, 140 Pa. St. 344.*

In *Van Doren* v. *Olden,* the learned chancellor further says (at *p. 180*) that "when an extra dividend is declared out of the earnings or profits of the company after testator's death, such extra dividend belongs to the life tenant, *unless part of it was earnings carried to account of accumulated profits* or surplus earnings at the death of testator, in which case so much must be considered as part of the capital." The learned chancellor did not, however, by this further statement mean to change the rule previously stated, but meant, as I understand, that if the dividend was declared *and paid* in part or whole out of the accumulated surplus, as it existed on the books at the death of the testator, and the payment of the dividend reduced the amount of surplus below what it stood at on the books at the testator's death, it was as between tenant for life and remainderman to that extent a payment out of the capital existing at testator's death. If the subsequent payment of the dividend did not trench on this surplus and the surplus after the payment continued to be as large as at testator's death, then the payment

was from income and not from capital. The trustee in the latter case after the payment still retains, and evidently as capital, at least the par value and a surplus as large as at testator's death. The order of reference directed in *Van Orden* v. *Olden* (at *p. 180*) shows clearly, I think, that this is the proper construction to be placed on the expression "dividend declared out of earnings carried to account of surplus profits," and that the learned chancellor did not intend to deprive the life tenant of the dividend unless the earnings out of which it was paid had not only been carried to the account of surplus profits during the lifetime of the testator, but also the dividends had been actually paid, wholly or in part, by an appropriation of part of this surplus after exhausting surplus subsequently carried to the account. The order of reference directed (at *p. 180*) that if the per cent. of the accumulated profits held at the filing of the bill was equal to the per cent. held at the death of testator, the life tenant was entitled to the whole dividend; if not, so much of the extra dividend as would make the original stock and present surplus equal to the stock and surplus at the death of the testator, should be retained and the excess paid to the life tenant.

The general rule declared in *Van Orden* v. *Olden* has never been questioned in this state, but has been approved in *Ashurst* v. *Field's Administrator, 11 C. E. Gr. 11 (Chancellor Runyon, 1875)*; *Pratt* v. *Douglass, 11 Stew. Eq. 516, 541 (Errors and Appeals, 1884)*; and the doctrine first settled in *Earp's Case* has, it may be further stated, been at last so thoroughly and generally established in the American courts that it may now be called the general American rule, as distinguished from the English and Massachusetts rules. *2 Thomp. Corp. Off. §§ 2193 et seq.; Appeal of Smith, 21 Atl. Rep. 438 (1891)*; *McLouth* v. *Hunt, 154 N. Y. 179 (Court of Appeals, November, 1897)*, and cases cited.

In the present case the amount of surplus profits at testator's death still remaining after charging off the $49,000 stock dividend in January, 1896, was $69,596.65. On July 1st, 1896, being the end of the fiscal year of the company, a further credit to the surplus account was made of $123,743.68 for the profits

Lang's Executor *v.* Lang.

of the entire preceding year, making the total credit at that date $193,117.13. From this total the dividend in question, $60,000, was declared and paid in July, 1896. This payment of $60,000 must, under the rule as above explained, be considered as made not from the earlier item of $69,373.45 standing to the credit of the profit account at testator's death, but, as between the present contestants and for the purposes of testator's will, be considered as made from the profits or earnings above the $69,373.45 and subsequently added, there being a sum abundant for this. On the facts, therefore, in the present case the source of the dividend now in question is the income and not capital under the above rule. The report of the master finding it to be income is therefore approved and the exceptions are overruled. Whether for the purpose of final settlement between the remainderman and tenant for life, on the sale of the shares, the surplus, as it existed on the books at testator's death, is to be taken conclusively as the value or amount of capital to be invested, or whether the principal is entitled to be increased by a proportion of profits of the year which were or may have been earned to that time, although not yet carried to the surplus account, if this proportion can be ascertained, is not now directly involved and is not passed upon. Where stock has a continuous market value this element of doubt is largely eliminated, but in the present case the stock has not been sold on the market at all and has no fixed market value which could be taken, as it was in *Earp's Case,* as a basis for fixing value at the time of testator's death and at subsequent periods.

Another ground for declaring the dividend to be capital instead of income was urged, and very ably, by counsel for the infant defendants on the hearing, and involved questions not referred to the master. The testator's will expressly directed his executors

"to sell my bank stock and also to sell and dispose of, to the best advantage, all my other personal property not hereinbefore bequeathed [including the shares now in question], and to keep the proceeds of such sales and all other moneys of my estate otherwise received securely invested in bonds secured by mortgage upon improved real estate, the interest thereof, with the other income of my estate, to be appropriated as hereinafter directed."

After directing certain payments out of the income he then (section 5) directs his executors

"to pay my son, William, $150 per month during his natural life, and after paying taxes, &c., to also pay him the residue of the income of my estate then on hand during his natural life."

The contention on behalf of the remainderman is that the will directs the absolute conversion of this stock and a special investment of the proceeds, and that as between the remainderman and the tenant for life, the life tenant is entitled to receive only so much of the income as would have arisen from the personal estate as interest, if this personal estate had been converted and invested according to the trust within a year after testator's death, and the trustees cannot be allowed any great payment to the life tenant in passing their account, and must hold any balance as principal. The English rule is stated in this general form. *2 Perry Trusts* § *548; Hill Trust. (2d Am. ed.) *387; Dimes* v. *Scott, 4 Russ. 195 (1827).* But the rule as there declared in reference to personal securities is based to some extent upon the fact that the securities are such as the executor or trustee could not under the will or under their rules properly hold as trust investments, but must be converted at once; and on the question of the application of the rule, great weight is given to the directions of the testator as contemplating immediate conversion or holding longer than the year.

In a late case, *Sparling* v. *Parker, 9 Beav. 524, 526 (1846),* there was a bequest to trustees to invest all moneys and all mortgages, shares of stock, &c., as can be immediately sold without disadvantage, and, otherwise, as soon as may be, in the purchase ·of lands, and a direction that until converted, interest should be paid to one Mrs. P. The question arose four years after testator's death, as to the right to the income on the property still unconverted. Lord Langdale, master of the rolls, in reference to the claim that the rule was absolute that it was the duty of executors to convert within the year, and that although there were no executors who could sell (owing to a dispute over the probate of the will), yet the accounting must proceed on that

basis, says (at *p. 529 et seq.*) "that this doctrine has unfortunately given rise to many conflicting decisions of different judges; that each case of this kind must depend on its own peculiar circumstances, and on the intention of the testator as to what should be done with the income until the time of conversion, if this can be ascertained from the will." And he held in this case that, there being no direction for immediate conversion, and the conversion having been delayed without any fault, and no want of discretion in that respect being suggested, the entire income pending conversion should go to tenant for life. The intention of the testator, as disclosed by his will, in reference to the destination of the income pending conversion, is to be discovered and applied if possible, as it seems to me, in preference to any fixed general rule, and, in ascertaining this intention, it must be borne in mind that unless the will expressly directs a conversion within a limited time, securities held by the testator at his death would be legal investments of the estate pending the conversion directed by the will. Except for the direction to sell "to the best advantage," and then invest in bond and mortgage, the investment might have continued as a permanent investment under our statute. *Gen. Stat. p. 2401 § 197.*

In this case testator's stock is to be sold and disposed of by the executors to the best advantage; this does not require an immediate sale, and, as appears in this case, no sale by the complainant executor could have been made before the declaration of this dividend. The executor named in the will did not receive his letters until September 26th, 1896, nearly three months after the declaration of the dividend, a delay due probably to the appointment of an administrator *cum testamento annexo*. No claim is made that an advantageous sale could have been made before July 1st, 1896, by anybody, and the failure to convert before July 1st was not due to the fault of the executor, nor can it be considered a failure to sell as directed. And inasmuch as the testator gives to his son, William, the entire residue of the income of his estate, it seems to me that, under the terms of the will itself, the whole dividend now in question, received while no conversion could be effected, was income, and that the case

does not come within the application of the rule relied on by counsel.

Upon the whole case, therefore, a decree will be advised direct-ing the executors to treat the dividend as income, and pay it accordingly under the directions of the will.