JOHN O. SHAW, JR., trustee, *vs.* FRANCIS T. CORDIS.

Hampden.　Sept. 28, 1886. — Jan. 13, 1887.　W. ALLEN, J., absent.

A testator by his will gave the residue of his estate to his executors in trust during the lives of his four sons; and directed the trustees to convert said residue into three enumerated kinds of securities, called stocks, and "to pay over all the dividends and income of said stocks, over and above the costs and charges of the executors and trustees, . . . . as fast as they shall be received, in equal proportions, to each of my said four sons." The trustees bought certain bonds, included in the securities specified in the will, for which they paid a premium. *Held,* that the testator intended that the whole income, after conversion into the prescribed securities, should be paid to his sons, without any deduction to make good to the remaindermen the premium which it might be necessary to pay in buying them.

APPEAL, by the trustee under the will of Thomas Cordis,* from a decree of the Probate Court, disallowing an item in the

---

* The clauses of the will material to the determination of the question presented are as follows:

"All the rest, residue, and remainder of my estate, real, personal, and mixed, not hereinbefore otherwise disposed of, after payment of my just debts, funeral charges, and charges of settling my estate, as well as the

trustee's account of $221.65, being the " Reserve of income of government bonds to cover principal toward reduction of premium." The case was heard by *Field*, J., and reserved for the determination of the full court; such decree to be entered as justice might require. The facts appear in the opinion.

*T. H. Russell*, for the appellant.

*J. E. McIntire*, for the appellee.

C. ALLEN, J.   If a testator leaves bonds which he owns to trustees, with direction or authority to hold the same, paying the interest to certain persons for life, with remainder over, the fact that such bonds are worth a premium at and after his death will not warrant the trustees in retaining any portion of the interest for the benefit of the remaindermen.   To this extent, at

---

charges of my executors, hereinafter named and appointed, I hereby give, devise, and bequeath to my executors hereinafter named, and to the survivors and survivor of them and the heirs and assigns of such survivor, to, upon, and for the uses, intents, and purposes, and with and subject to the powers, provisos, conditions, and limitations hereinafter mentioned and expressed, of or concerning the same, that is to say:

" To the use of my said executors, and the survivors and survivor of them, and the heirs, executors, and administrators of such survivor, for and during the lives of my four sons, Thomas Frederick, Francis Temple, Edward, and Clarence Russell, and the life of the longest liver of my said four sons, upon the especial trusts, however, that my said executors, and the survivors and survivor of them, and the 'executors and administrators of such survivor, shall and do, during the lives of my said four sons, and the life of the longest liver of them, take and receive the rents and profits accruing, and that shall from time to time accrue, from the real estate, and therewith make all necessary repairs and improvements, and pay all taxes, insurance, and other necessary charges and expenses in and about the same, and after all such payments deducted, shall, as soon as received, and as often, pay over the residue of such rents and profits to my said four sons, during their joint and several lives, in equal proportions, to and for their respective sole and separate use and benefit forever.   And after the decease of one or more of my said sons, so long as either of them shall live, then shall pay over the proportion that such deceased son or sons would have been entitled to receive, of such residue of such rents and profits, had he or they been living, to the legal heirs of such deceased son or sons.

" And upon the further trust, to lay out and invest all said rest and residue of my personal estate and property, (except that my said executors and trustees may permit any investments that I shall have made in manufacturing, insurance, or railroad, or other stocks to remain thus invested, and shall not change any such investments so long as they or the majority of them shall deem such investments safe or for the interest of all concerned,) in the stocks

least, the decisions heretofore made by this court agree.  *Hemenway* v. *Hemenway*, 134 Mass. 446, 452.  *New England Trust Co.* v. *Eaton*, 140 Mass. 532, 542, 543.  In the present case, the testator did not own the bonds in question at the time of his death, but in his will he gave explicit directions to his trustees to convert the residue of his estate into three enumerated kinds of securities, which include these bonds ; in which respect this case differs from that last cited above.  It does not appear what value any of them then bore.  It has not been intimated in the argument, and there is no legal presumption, and there is nothing in the known history of the time, enabling us to see that the testator must have contemplated that any of them could certainly be bought below or at par.  So far as we know or can assume, they might cost a premium.  Nevertheless, he left no discretion in his trustees to go beyond the securities particularly

---

of the city of Boston, if they can be obtained at a reasonable price in the opinion of my executors.  If such stocks cannot be obtained at a reasonable price, then in the stocks of the Commonwealth of Massachusetts, or of the United States of America, but in no case in individual securities.  And it is my will, and I do hereby direct, that all certificates of investments made by my executors in such stocks shall express that they are held in trust, and for whom they are thus held in trust.

"And upon the further trust to pay over all the dividends and income of said stocks over and above the costs and charges of my said executors and trustees in or about, or relating to the said trusts, or any of them, as fast as they shall be received, in equal proportions, to each of my said four sons, during their lives, and the life of the survivors and survivor of them, and after the decease of one or more of my said four sons, to pay over the proportion thereof, to which said deceased son or sons would have been entitled, if living, to the then legal heirs of such deceased son or sons, to and for their respective sole and separate use and behoof forever.  And upon the decease of all my said sons, upon the further trust and to the use of the legal heirs of my said four sons respectively, in equal proportions, by right of representation, and their respective heirs, executors, administrators, and assigns forever, to their sole use and behoof forever.

"And I hereby direct, and the devises and bequests to my executors as above are upon the especial trusts, that they and the survivors and survivor of them, and the heirs, executors, and administrators of such survivor, after the death of all my said four sons, do and shall convey, assign, transfer, and set over said real estate and stocks to said heirs of my said four sons respectively in the proportions above named by right of representation, to have and to hold the same to them respectively, and to their respective heirs, executors, administrators, and assigns, to their sole use and behoof forever."

specified. The trust was to end with the death of his last surviving son, and thus might end at any time; possibly long before the maturity of the bonds. His sons were the prominent objects of his bounty. This was declared when the will first came before this court for construction. *Treadwell* v. *Cordis*, 5 Gray, 341, 355. Under these circumstances, having given this direction for conversion into the specified securities, which, after the manner of that time, he calls stocks, he adds the injunction " to pay over all the dividends and income of said stocks," over and above costs and charges of the executors and trustees, " as fast as they shall be received, in equal proportions, to each of my said four sons." In point of fact, the trustees paid a premium for most of the bonds. It is not necessary, if it is possible, to lay down any further rule for the case than to look for the intention of the testator. The question is, whether any intention as to the disposition of the income, with reference to the respective rights of the life tenants and remaindermen, can be collected from the will. We think it can. The fair construction of the will leads to the conclusion that the testator intended that the whole income, after conversion into the prescribed securities, should be paid to his sons, without any deduction to make good to the remaindermen the premium which it might· be necessary to pay in purchasing them. See *Lambert* v. *Lambert*, 20 W. R. 943; *Brown* v. *Gellatly*, L. R. 2 Ch. 751, 758 ; *Chancellor* v. *Brown*, 26 Ch. D. 42. *Decree affirmed.*