In the Matter of the Final Judicial Settlement of the Annual Accounts of SAMUEL N. HOYT et al, as Trustees for MARY IRENE HOYT, under the Will of JESSE HOYT, Deceased.

SAMUEL N. HOYT et al., Trustees, etc., et al., Respondents; MARY IRENE HOYT, Appellant.

| | |
|---|---|
| 160 | 607 |
| s 161 | 659 |
| 160 | 607 |
| d165 | 487 |
| j165 | 493 |
| 160 | 607 |
| 171 | s 130 |

1. WILL — LOSS ON ACCOUNT OF PREMIUM ON TRUST INVESTMENTS AS BETWEEN LIFE TENANT AND REMAINDERMAN. The question as to how the loss, occasioned by the payment of premiums on investing the principal of a testamentary trust fund, shall be borne as between the life tenant and remainderman, is to be determined by ascertaining, when that can be done, the intention of the testator, as expressed in the will creating the trust, in view of the relations of the parties and the surrounding circumstances.

2. INTENTION OF TESTATOR TO IMPOSE LOSS OF PREMIUM UPON REMAINDERMEN. A will directed that the sum of $1,250,000 should be appropriated from the testator's estate and held in trust by the executors for the use and benefit of his daughter during her life. The trustees were directed "to collect and receive the interest, dividends and income therefrom and from each and every part thereof, and to apply to her use, for and during her natural life, in the most bounteous and liberal manner, as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires." The will then provided that the principal sum, or the securities in which the same should be invested, and any surplus of income therefrom should, upon the daughter's death, go to certain nephews and nieces of the testator. Later in the will, the testator directed his executors to distribute or retain, without a sale, all such stocks or securities as he might have at the time of his decease, which they thought expedient to hold, but that they should not make any new or other investments, excepting only in first mortgage bonds and mortgages on unincumbered real estate, or in United States, state, railroad and city bonds. In creating the trust fund for the daughter, the trustees did not set apart any of the securities held by the testator, but took the sum of $1,250,000 in cash and invested it, chiefly in government and railroad bonds at a high premium. *Held,* that it was the intention of the testator, derived from the face of the will and the surrounding circumstances, to impose the loss of the premium upon the remaindermen, his nephews and nieces; and, hence, that the trustees were not authorized to reserve a portion of the interest money from the daughter, the life tenant, to make good, against the wearing away of premium, the amount paid for premium.

3. ANNUAL ACCOUNTINGS — RES ADJUDICATA. On an annual accounting by the trustees, in which the life tenant objected to the reservation of

a portion of the interest money to make good the amount paid from the principal trust fund for premium on investment securities, the trustees insisted that decrees in former annual accountings, in which such reservations had passed unchallenged, were *res adjudicata* and prevented the life tenant from raising the question. *Held*, that while the decrees in the former accountings were binding upon the life tenant as to the amounts therein involved, and would not be affected by the present decision, they did not prevent her from raising the question now as to the distribution of the money in the hands of the trustees.

*Matter of Hoyt*, 27 App. Div. 285, reversed.

(Argued October 13, 1899; decided November 21, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 23, 1898, reversing a decree of the Surrogate's Court of the county of New York, finally judicially settling and allowing the annual accounts of the trustees for Mary Irene Hoyt under the last will and testament of her father, Jesse Hoyt, deceased.

The accounts involved cover the period from the 14th day of August, 1894, to 14th day of August, 1895.

On the 14th day of August, 1882, Jesse Hoyt, a resident of the city of New York, died possessed of a large estate. He left a last will and testament, dated the 26th day of June, 1882, the fourth and eleventh subdivisions of which are particularly involved in this controversy.

"*Fourth.* It is my will, and I hereby direct that the sum of one million two hundred and fifty thousand dollars shall be appropriated and received from my estate, real and personal, wheresoever situated, or from the proceeds thereof, by such of my executors hereinafter named as reside or do business in the state of New York, or to whom letters testamentary on this, my will, shall be granted by any surrogate in said state of New York, and as soon as it can or shall be realized or received by such executors and held in trust by them and the survivors and survivor of them, and their successor or successors to the trust, to and for the use and benefit of my daughter, Mary Irene Hoyt, for and during her natural life; and in the meantime, during such her life, to invest and reinvest and keep the same invested, and to collect and receive the interest,

dividends and income therefrom and from each and every part thereof, and to apply to her use for and during her natural life, in the most bounteous and liberal manner, as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires, the said interest, dividends and income so to be collected and received as the same shall be required for her use and benefit.

"And it is further my will, that the said sum of money hereinabove in this article directed to be appropriated and held in trust for and during the natural life of my daughter Mary Irene, and for her use, as above herein provided as to the interest, dividends and income therefrom, or the securities in which the same shall be invested, and any surplus of income therefrom, if any, which shall not have been applied to her use during her natural life, shall, on the death of my said daughter, go and be distributed to and among my nephews and nieces, children of my brothers Alfred M. Hoyt, Reuben Hoyt and James H. Hoyt, who shall be living at the time of the decease of my said daughter, in equal portions, if all of them shall be living, or if any of them shall have died without leaving issue living at the time of the decease of my said daughter.

"If any of my said nephews or nieces shall have died at or before the decease of my said daughter, leaving a child or children living at the time of the decease of my said daughter, then the division is to be made in equal portions between those who shall be living and the child or children of any such deceased nephew or niece, such child or children taking the portion of its or their deceased parent, and in equal portions thereof if more than one."

"*Eleventh.* I hereby order or direct my said executors hereinabove appointed, and the survivors and survivor of them, to distribute or retain, without a sale, all such stocks or securities as I may have at the time of my decease, which my said executors shall think it expedient to hold, with a view to and in expectation of appreciation, and to distribute or retain any stocks or securities which I may hold at the time of my

77

decease as an investment, which my executors may think it best to retain as a permanent investment, the choicest, and those having longest to run, to be set apart for my wife's use, as hereinabove directed.

" But my said executors are not to make any new or other investments, excepting only in the first mortgage bonds and mortgages on unincumbered real estate held in fee simple, or in the public stocks or bonds of the United States, or state stocks or bonds, first mortgage railroad bonds and city bonds, in either of which they may make investments in their discretion, having regard to the best interest of my estate.

" And I hereby vest all the rights and title, power, authority, control or direction and discretion conferred upon any of my said executors and trustees in the survivors and survivor of them, and in any administrators and administrator, with the will annexed, to whom letters may be granted, or to any trustee or trustees who may be appointed by the competent court on the death of my said executors hereinabove named, and the survivors and survivor of them, or on any other contingency by which my said executors, and the survivors and survivor of them, shall become incapable of acting or cease to act."

The other facts in the case appear in the opinion.

*William D. Guthrie* and *William F. Moore* for appellant. The contention of the trustees that the expense of the premium on the bonds must be borne solely by the life tenant and not by the tenants in remainder, is untenable. (*McLouth* v. *Hunt*, 154 N. Y. 179 ; *Hemenway* v. *Hemenway*, 134 Mass. 446 ; *Shaw* v. *Cordis*, 143 Mass. 443 ; *N. E. T. Co.* v. *Eaton*, 140 Mass. 532 ; *Matter of Gerry*, 103 N. Y. 445 ; *Hagan* v. *Platt*, 48 N. J. Eq. 206 ; *Parsons* v. *Winslow*, 16 Mass. 361 ; *Veazie* v. *Forsaith*, 76 Me. 172 ; *Pierrepont* v. *Edwards*, 25 N. Y. 128 ; *People ex rel.* v. *Davenport*, 117 N. Y. 549.) The defense of *res adjudicata* raised by the trustees is not well taken. (*Bowditch* v. *Ayrault*, 138 N. Y. 222.)

*William H. Rand, Jr.*, for respondents. The actual income
derived from a fund invested in securities purchased at a
premium is what the fund earns, remaining itself intact, and
not the entire interest received annually from the securities.
(*Farwell* v. *Tweddle*, 10 Abb. [N. C.] 94; *People ex rel.* v.
*Davenport*, 30 Hun, 177; 117 N. Y. 549; *N. Y. L. Ins. &
T. Co.* v. *Kane*, 17. App. Div. 542; *Wright* v. *White*, 136
Mass. 470.) It was the intention of Jesse Hoyt to bequeath
over to his nephews and nieces, upon the death of Mary Irene
Hoyt, the specific sum of $1,250,000, or its equivalent in
securities, and to give his daughter during her life no more
than the net income actually earned by that sum. (*Matter of
Albertson*, 113 N. Y. 434; *Reynal* v. *Thebaud*, 54 N. Y. S.
R. 144; *N. Y. L. Ins. & T. Co.* v. *Kane*, 17 App. Div. 542;
*Hoyt* v. *Hoyt*, 112 N. Y. 493.) The trustees were authorized
to establish and maintain the sinking fund and to make the
reservations of interest. (*Farwell* v. *Tweddle*, 10 Abb. [N.
C.] 94; *Reynal* v. *Thebaud*, 54 N. Y. S. R. 144; *N. E. T. Co.*
v. *Eaton*, 140 Mass. 532; *Stevens* v. *Melcher*, 152 N. Y. 551;
*N. Y. L. Ins. & T. Co.* v. *Kane*, 17 App. Div. 542.) The
yearly reservation of a portion of the interest moneys received
on securities purchased by the trustees to make good the
amounts paid from the principal of the trust fund for pre-
miums paid on those securities, is not an accumulation of
interest money or income arising from personal property which
might be void under the provisions of the Revised Statutes
prohibiting such accumulations except during minority.
(Chaplin on Suspension of Power of Alienation, §§ 116, 274;
*Livingston* v. *Tucker*, 107 N. Y. 549; *Craig* v. *Craig*, 3
Barb. Ch. 92; *Matter of Nesmith*, 140 N. Y. 609; *N. E.
T. Co.* v. *Eaton*, 140 Mass. 532.) The appellant is barred and
equitably estopped by the decrees entered upon the several
accountings of the trustees heretofore had from raising or
litigating the questions which she has presented upon this
accounting as to the right of the accountants to make the
reservation of interest moneys set forth in the present account.
(Code Civ. Pro. §§ 2802, 2813; *Matter of Hood*, 90 N. Y.

512; *Embury* v. *Conner*, 3 N. Y. 511; *Le Guen* v. *Gouverneur*, 1 Johns. Cas. 436; *Blair* v. *Bartlett*, 75 N. Y. 150; *Newton* v. *Hook*, 48 N. Y. 676; *Goebel* v. *Iffla*, 111 N. Y. 170; *Lorillard* v. *Clyde*, 122 N. Y. 41; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Smith* v. *Smith*, 79 N. Y. 634; Freeman on Judgments, § 248; Wells Res Adjudicata, 248–251; *Pray* v. *Hegeman*, 98 N. Y. 351.)

*P. Tecumseh Sherman*, special guardian, for infant respondent. Apart from the effect of previous decrees, the action of the trustees in establishing and maintaining the sinking fund and in making the payments thereto as in the account herein set forth, was legal and proper, because in accordance with the intention of the testator. (*McLouth* v. *Hunt*, 154 N. Y. 179; *N. E. T. Co.* v. *Eaton*, 140 Mass. 534.) The life tenant is equitably estopped from claiming the interest and income paid into the sinking fund. (*Dezell* v. *Odell*, 3 Hill, 215; *W. C. Co.* v. *Hathaway*, 8 Wend. 483; *Plumb* v. *C. C. M. Ins. Co.*, 18 N. Y. 392; *Trustees, etc.*, v. *Smith*, 118 N. Y. 640; *Continental Bank* v. *Nat. Bank*, 50 N. Y. 575; *Blair* v. *Wait*, 69 N. Y. 113; *N. Y. R. Co.* v. *Rothery*, 107 N. Y. 315; *Thompson* v. *Poor*, 147 N. Y. 402.) The life tenant is barred by the previous decrees of the Surrogate's Court from objecting to all payments made into the trust fund prior to the date of objecting. (*Matter of Perkins*, 75 Hun, 129; *Garlock* v. *Vandervort*, 128 N. Y. 374; Code Civ. Pro. § 2802; *Lorillard* v. *Clyde*, 122 N. Y. 47; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Smith* v. *Smith*, 79 N. Y. 634; Freeman on Judgments, § 280; Wells Res Adjudicata, 248–251; *Goebel* v. *Iffla*, 111 N. Y. 177; *Aurora City* v. *West*, 7 Wall. 106; *Griffin* v. *L. I. R. R. Co.*, 102 N. Y. 452; *Patrick* v. *Shaffer*, 94 N. Y. 430.)

Bartlett, J. The principal question submitted for our determination relates to the premium on bonds in which the trust estate has been invested.

It is insisted on behalf of the appellant, Mary Irene Hoyt, that she is entitled to the entire income earned by the trust

fund ; the trustees claim that there should be deducted from this income a certain sum each year to meet the "wearing away" of the premium as the bonds approach the date of falling due, in order that the remaindermen may be protected and the principal of the trust fund turned over to them at the falling in of the life estate unimpaired.

This matter was originally sent to a referee, who decided in favor of the trustees ; the Surrogate's Court of the county of New York reversed this decision, holding in favor of the life tenant ; the Appellate Division reversed the decree of the Surrogate's Court.

In order to determine the question presented by this appeal, it is necessary to consider the facts surrounding the execution of the will. The testator was a man of very large wealth, estimated at from six to eight millions of dollars, nearly the entire amount of which he bequeathed to his brothers and their children.

For some reason that is not disclosed by this record, but which we must assume was sufficient, the testator made a very peculiar will so far as his only child and daughter was concerned. By the fourth clause thereof he directed that the sum of $1,250,000 should be appropriated from his estate and held in trust for the use and benefit of his daughter during her life. The trustees were directed to collect and receive the interest, dividends and income therefrom, and from each and every part thereof, and to apply to her use, for and during her natural life, in the most bounteous and liberal manner, as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires.

The testator further provided that the principal sum, or the securities in which the same shall be invested, and any surplus of income therefrom, should, upon his daughter's death, go to certain nephews and nieces.

It will thus be observed that the daughter, while entitled to receive the interest upon a very considerable sum in order to meet most lavish annual expenses, was not given outright any portion of the millions constituting her father's estate.

In the light of these facts we are called upon to determine the intention of the testator when drafting the fourth clause of his will.

It is insisted by the trustees that it was the intention of Jesse Hoyt to bequeath over to his nephews and nieces, upon the death of Mary Irene Hoyt, the specific sum of $1,250,000, or its equivalent in securities, and to give his daughter during her life no more than the net income actually earned by that sum.

It is urged by the daughter's counsel that not only was it testator's intention to give the entire income, but that in case of doubt or ambiguity the law presumes in favor of the child as against the claims of collateral relatives; or, in other words, that if the probabilities and indications are equal on each side as against the other, the just inclination of the courts will favor the child.

By the eleventh subdivision of the will the testator directed his executors to distribute or retain, without a sale, all such stocks or securities as he might have at the time of his decease, which they thought expedient to hold, but that they should not make any new or other investments, excepting only in first mortgage bonds and mortgages on unincumbered real estate, or in the public stocks or bonds of the United States, or state stocks or bonds, first mortgage railroad bonds and city bonds.

In creating this trust fund for the daughter it appears that the trustees decided not to set apart any of the securities held by the testator at the time of his decease, but took the sum of $1,250,000 in cash and invested it chiefly in government four per cent bonds and railroad bonds at a high premium. This premium in two purchases reached twenty-nine per cent for the government bonds and thirty-three and one-half per cent for some of the railroad bonds. The result was that nearly $245,000 was absorbed by the premium.

The trustees decided that the life tenant ought to bear the entire loss thus imposed upon the fund, and, under expert computation, have kept back annually from the income the sum of $8,039.00 as a sinking fund to make good the premium that will have worn away when the bonds fall due.

The courts of our own state, of other states and of England have discussed this question in various phases as to the rights of the life tenant and the remainderman, and some of the decisions are conflicting and not to be reconciled.

This court, in the recent case of *McLouth* v. *Hunt* (154 N. Y. 179), had occasion to examine this question in one aspect of it, Judge O'BRIEN writing the opinion. He then said: "Notwithstanding the conflict of authority to which I have just referred, there is one principle or rule applicable to this case, with respect to which the parties are all at agreement, and that is that the questions are not to be determined by any arbitrary rule, but by ascertaining, when that can be done, the meaning and intention of the testatrix, to be derived from the language employed in the creation of the trust, from the relations of the parties to each other, their condition and all the surrounding facts and circumstances of the case."

In considering the surrounding facts and circumstances in the case at bar, to which we have already alluded, it is reasonable to infer that the testator intended in this sole provision for his daughter that she should receive, as he expressed it in the fourth subdivision of the will, "the interest, dividends and income therefrom, and from each and every part thereof," referring to the trust fund.

He expresses his desire in clear and unmistakable language to provide for her in the "most bounteous and liberal manner as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires."

He directs that upon the death of his daughter all moneys set apart for her use "or the securities in which the same shall be invested" shall be disposed of in a certain manner.

It seems quite apparent that the testator contemplated that the trust fund or a portion of it might be loaned out on bond and mortgage and thus not lose its identity as a cash sum, while on the other hand a part of it might be placed in securities at a premium, in which event the remaindermen were to take the fund as invested.

It is fair to assume that the testator, who was a man of rare

business sagacity, understood all the details of investing large sums of money, and that, if he had intended to impose upon the income of his daughter's trust fund the burden of the high-premium incident to the class of securities to which he restricted his trustees, he would have expressed himself in clear language to that effect.

It seems to us very obvious that the testator intended to devote to his daughter's use the entire income of the fund which he set apart for that purpose, if necessary, and that the disposition of the principal after her death was a secondary consideration. The remaindermen, nephews and nieces, were made very wealthy by other provisions of the will.

If it proved necessary to promote his daughter's convenience and comfort and gratify her reasonable desires, the testator seems to have employed language that cannot be misconstrued in this connection, and dedicated the entire income to that purpose.

It is true that he has provided that if there should be any surplus of the income, that it, together with the moneys constituting the trust fund, or the securities in which the same shall be invested, are to be disposed of in a certain manner.

It seems quite impossible, in giving to the language of the fourth subdivision of the will its plain and ordinary meaning, to spell out an intention on the part of the testator to provide a sinking fund to be deducted from the income in order to make good the premium paid in purchasing the securities.

The testator evidently regarded a surplus of income as a mere possibility, and as a matter of precaution provided for the disposition of the same. He also seemed to anticipate that the principal of the trust fund would pass to the residuary legatees either as money or its equivalent, or in the form of investment then existing.

There is no language, fairly construed, that can be considered as imposing upon the trustees the duty of turning over to nephews and nieces the full sum of $1,250,000 in cash, or its equivalent.

The argument of the trustees seems to go to this extent:

That if they had seen fit to constitute a trust fund for the daughter out of the investments held by the testator at the time of his death, or to have invested cash in the form of specific mortgage investment on real estate, where it would not lose its identity, the income of the daughter would be subjected to no diminution on account of premium; but if they chose to take the entire trust fund in cash and invest it, as they actually did, it would be subjected to a loss of eight thousand dollars and more a year.

If we are right in the conclusion reached, that it was the intention of the testator to impose the loss of premium upon the remaindermen, the question of conflict of authority in the cases cited in the briefs here and the opinion below is unimportant.

As we have before pointed out, the decision in the *McLouth Case* (154 N. Y. 179) rested wholly upon the intention of the testator as derived from the face of the will and the surrounding circumstances.

We take the same course in the case before us and decide it upon the special facts presented.

The Appellate Division placed their decision upon the intention of the testator, and reached a conclusion contrary to that which has been arrived at by this court.

In the case at bar the loss involved in the payment of this heavy premium is necessarily apportioned between the life tenant and the remaindermen to this extent: The life tenant, for a long series of years, receives interest on a largely reduced principal sum, and the remainderman at the end of that period loses the amount of the premium paid. This loss of the remainderman may, however, be reduced if the life estate falls in before the bonds mature and while they are still quoted at a large premium.

The manner in which the loss shall be borne, occasioned by the payment of premiums on investing the principal of a trust fund, in the absence of any expressed intention of the testator, is a question not presented by this record, and we refrain from discussing it.

An additional point is taken by the respondents to the effect that, in several annual accountings prior to the one now before the court, the testator's daughter allowed the reservation of a portion of the interest money by the trustees to make good the amount paid from the principal trust fund for premium to pass unchallenged, and consequently the decrees therein are *res adjudicata* in this proceeding, and prevent her from raising the question at this time.

We are of opinion that this point is not well taken. The decrees in the former accountings are binding upon the daughter of the testator as to the amounts therein involved, and will not be affected by our decision herein, but this does not prevent her from raising the question now as to the distribution of the money in the hands of the trustees. (*Bowditch* v. *Ayrault,* 138 N. Y. 222, 231.)

The order of the Appellate Division appealed from should be reversed, and the decree of the Surrogate's Court of the county of New York affirmed, with costs to the appellant in all the courts.

All concur, except PARKER, Ch. J., GRAY and HAIGHT, JJ., dissenting.

Order reversed, etc.