In the Matter of the Accounting of E. MATILDA ZIEGLER et al., as Executors of and Trustees under the Will of WILLIAM ZIEGLER, Deceased.

In the Matter of the Application of WILLIAM ZIEGLER, JR., for the Judicial Settlement of the Accounts of WILLIAM J. GAYNOR et al., as Trustees under the Will of WILLIAM ZIEGLER, Deceased.

C. MATILDA ZIEGLER et al., as Surviving Executors and Trustees et al., Appellants; WILLIAM ZIEGLER, JR., Respondent.

Executors and administrators — testamentary trustees — commissions — when by terms of testator's will the duties of the executors, who also acted as trustees, are so interwoven and blended that their functions both as executors and trustees are inseparable, double commissions cannot be allowed if objected to.

1. The same person may be entitled to compensation as executor and also as trustee, in respect to the same estate, or some part thereof, but this does not follow in every instance where trust duties are imposed upon an executor. Where, by the terms or true construction of the will, the two functions with their corresponding duties co-exist, and run from the death of the testator to the final discharge, interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function would end and the other begin, double commissions or compensation in both capacities cannot be properly allowed.

2. On examination of the terms of the will in question it appears that the intention of the testator was that the executors named should take the entire estate, invest the same, and retain, after payments directed to be made therefrom, all income until the residuary legatee attained his twenty-first year; that the *corpus* of the estate was to be held intact by them until his son attained the age stated therein, at all times to be kept invested by the executors, of whom his son would be one, and qualified to act upon reaching the age of twenty-one years. The ordinary duty of the executors to turn the estate into money was coupled with the direction to take, invest and care for the estate, and make payments of the bequests stated in the will at the times fixed therein, which time the testator

anticipated would continue for a number of years. The duties thus imposed upon the parties named commenced upon the day they qualified as executors and such additional duty was inseparable from their functions under the will. The testator did not contemplate a period of time when the function of executors would terminate and the function of trustees should commence, nor is there any evidence of intention to impose upon them trust duties separate and distinct from the functions of executors. Hence the executors and trustees are not entitled to double commissions except where allowed by decrees on previous accountings, from which no appeal was taken.

3. The Surrogate's Court erroneously held that payments directed to be made under a decree in Surrogate's Court entered eight months after the death of one of several executors justified an allowance of commissions for making such payments to the estate of the deceased executor. (Code Civ. Pro. § 2730.)

*Matter of Ziegler*, 168 App. Div. 735, affirmed.

(Argued May 26, 1916; decided July 11, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1915, which modified and affirmed as modified a decree of the New York County Surrogate's Court judicially settling the accounts of surviving executors and trustees under the will of William Ziegler, deceased.

The facts, so far as material, are stated in the opinion.

*John G. Milburn* and *Robert Leslie Moffett* for E. Matilda Ziegler et al., as executors and trustees, appellants. Under the true construction of the Ziegler will there is a distinct separation of the duties and functions of the executors and trustees from which it follows that there is a several and separable action in each capacity and a time provided when the duties and functions of the executors cease and the duties and functions of the trustees begin. (*McAlpine* v. *Potter*, 126 N. Y. 289; *Johnson* v. *Lawrence*, 95 N. Y. 154; *Laytin* v. *Davidson*, 95 N. Y. 263; 2 Schouler on Wills, 1248; *Croker* v. *Dillon*, 133 Mass. 91; *Hall* v. *Cushing*, 9 Pick. 395; *Baldwin* v. *Smith*, 3 App. Div. 350; *Tobias* v. *Ketchum*, 32 N. Y.

35

327; *Morse* v. *Morse,* 85 N. Y. 60; *Ward* v. *Ward,* 105
N. Y. 74; *Matter of Dewey,* 153 N. Y. 66.) The decree
of November 30, 1906, provides that the parties as execu-
tors had fully accounted for the rest and residue of all of
the personal property that had come into their hands as
such executors and that they were discharged as to same
and that their duties as executors in relation thereto
ended and that they were liable for the property turned
over to themselves as trustees only as such trustees; by
force of such decree the title to such personal property
passed to the trustees for the purposes of the trusts
created in the will. (*Johnson* v. *Lawrence,* 95 N. Y. 162;
*Cochrane* v. *Schell,* 140 N. Y. 534; *Brown* v. *Wheeler,*
53 App. Div. 8; *Matter of Schlosser,* 63 Misc. Rep. 165.)
The surviving executors and trustees are entitled in both
capacities to full statutory commissions allowed in the
decree of May 1, 1914, involved in this appeal. (*Phœnix*
v. *Livingston,* 101 N. Y. 455; *Johnson* v. *Lawrence,* 95
N. Y. 162; *McAlpine* v. *Potter,* 126 N. Y. 287; *Matter
of Slocum,* 169 N. Y. 159; *Laytin* v. *Davidson,* 95 N. Y.
263; *Matter of Hood,* 98 N. Y. 371; *Matter of Mason,* 98
N. Y. 535; *Matter of Willetts,* 112 N. Y. 296; *Olcott* v.
*Baldwin,* 190 N. Y. 107; *Matter of Hunt,* 121 App. Div.
103.)

*George V. Brower* and *Ernest C. Brower* for Kings
County Trust Company, as executor of William J. Gaynor,
deceased, appellant. The accounting parties were prop-
erly acting as executors relative to sales of real estate.
No objection was filed or presented or issues raised before
the surrogate as to commissions on the accounting except
the commissions to William J. Gaynor on the accumu-
lated income. (Code Civ. Pro. § 2568.) The estate of
Mr. Gaynor was entitled to commissions on the accumu-
lated income. The commissions claimed are not from an
executory trust, but from an executed trust which was
fully completed when Mr. Ziegler reached twenty-one

years of age, over a year before Mr. Gaynor died. (*Matter of Allen*, 96 N. Y. 327; *Betts* v. *Betts*, 4 Abb. [N.C.] 317; *Matter of Kenworthy*, 44 N. Y. S. R. 275; *Matter of Newlands*, 7 Misc. Rep. 728; *Welling* v. *Welling*, 3 Den. 511; *Matter of Roosevelt*, 5. Redf. 601; *Matter of McCormick*, 46 Misc. Rep. 386; *Matter of Wilcox*, 125 App. Div. 152; *Matter of Ingraham*, 60 Misc. Rep. 44.)

*John M. Bowers, Joseph R. Swan* and *William A. Moore* for respondent. By the terms of the will of William Ziegler, there was added to the ordinary duties to be performed by the executors, the performance of the trust created by the will, and the exercise of the executorial and trustee functions were inseparably interwoven and blended together. (*Johnson* v. *Lawrence*, 95 N. Y. 154; *Laytin* v. *Davidson*, 95 N. Y. 263; *Hall* v. *Hall*, 78 N. Y. 535; *Matter of Martin*, 196 N. Y. 415; *Matter of Curtiss*, 9 App. Div. 285; *Matter of Clinton*, 12 App. Div. 132; *Matter of Reed*, 45 App. Div. 196; *Matter of Johnson*, 57 App. Div. 494; *Thorne* v. *de Breteuil*, 86 App. Div. 405; *Matter of Hunt*, 121 App. Div. 96.) A trust was created by the will, to be performed by the executors as part of their administration of the estate. (*Matter of Slocum*, 169 N. Y. 153.) The Gaynor estate is not entitled to one-half commissions upon payments made under and by direction of the decree herein. (*Matter of Worthington*, 141 N. Y. 9; *Matter of McCormick*, 46 Misc. Rep. 386; *Palmer* v. *Dunham*, 6 N. Y. Supp. 262; *Matter of Roosevelt*, 5 Redf. 601; *Matter of Douglas*, 60 App. Div. 64; *Matter of Todd*, 64 App. Div. 435; *Matter of Bidgood*, 36 Misc. Rep. 516; *Matter of Newlands*, 7 Misc. Rep. 728; *Matter of Moehring*, 154 N. Y. 423; *Matter of Vernon*, 77 Misc. Rep. 425.)

HOGAN, J. William Ziegler died May 24th, 1905, leaving a last will and testament which was duly admitted to probate in June, 1905. The testator left a

widow and one child, William Ziegler, Jr. The provisions of the Ziegler will called to our attention by the appellants follow:

"5. All the rest and residue of my estate, I give, devise and bequeath to my son William, after and subject to the following provisions:

"6. I appoint my said wife, William S. Champ, William J. Gaynor, and also my said son at the age of twenty-one years, my executors under this will. They shall take, care for and invest my estate in safe securities, collect all the rents and incomes, pay out of the same all necessary charges and expenses, and all annuities or sums given by this will; and also for the support and education of my son William what may be necessary. The balance of income they shall invest in safe securities and keep with the corpus of my estate until my said son comes twenty-one years of age. After he comes of age he shall receive the entire net income. When he comes twenty-five years of age they shall turn over to him one-quarter of the said corpus. They shall turn over to him another quarter thereof at the age of thirty, another at the age of thirty-five, and the last quarter at the age of forty. If he should die before me without lawful issue, or before he gets the said corpus, then the corpus, or the part of it he has not received, to go to my brothers and sisters and their heirs.

"7. I authorize my executors to leave my estate invested in the properties, stocks, bonds and mortgages, etc., in which I may leave it.

"8. I authorize my executors or those of them who serve, their survivors or survivor, upon the consent of my said wife during her life, and also of my said son after he comes of age, to sell, to sell and convey any property, I leave, real or personal."

In 1906 the executors of the will filed in the Surrogate's Court an account of their proceedings to November 30th, 1906. On the latter date a decree was entered in

effect that the executors had accounted for all the money
and property of the estate which had come to their hands
as executors and judicially settling and allowing the
account as filed.    The decree further provided that the
balance of cash and personal property in the possession of
the executors was the sum of $11,392,724.22, that out of
the balance in the hands of the executors they retain and
pay over to each executor his or her statutory commission
on the said property and estate for receiving, administer-
ing and paying over the same, the sum of $149,494.39 to
each, and one-half thereon to each for receiving the
same as trustees; that the executors should pay over to
and transfer to themselves as trustees the balance of cash
and personal property then remaining in their hands to
be held and administered by them under the trusts
created by the will; that they should thereafter continue
to perform their duties and exercise their powers as execu-
tors under the said will in all matters of administration,
sale of real property, or anything else remaining to be
done, and that said executors be and they hereby are dis-
charged and released from all liability in respect of all
matters and on account of all other acts and doing
embraced in the said accounting and this order and
decree.

From year to year thereafter down to and including
the year 1911, separate accounts were filed by the parties,
covering their proceedings as executors and also as trus-
tees.    As executors they accounted for the proceeds of
the sale of real estate and for the rents and income of the
property of the estate, both real and personal.    Decrees
were duly made by the Surrogate's Court settling such
separate accounts, and, although they do not appear in
the record, the briefs contain a statement that in each
instance the decrees directed them as executors to turn over
to themselves as trustees the proceeds of the sales of the real
estate made by them as executors in each year, and they
were therein allowed one-half the statutory commission

for receiving the proceeds of the sales of real estate, one-half commissions for paying the same out as executors to themselves as trustees and one-half commissions as trustees for receiving the same. In other words, they have been allowed double commissions annually since they assumed the functions of executors.

At the time of the first accounting William Ziegler, Jr., was fifteen years of age. In the accounting proceedings referred to, special guardians were appointed to represent him, and no appeal was taken from any of the decrees made therein.

July 21, 1912, William Ziegler, Jr., was twenty-one years of age. He instituted a proceeding to secure the payment to him of the accumulated net income which, under the terms of the will, was to be kept with the *corpus* until he arrived at the age of twenty-one years. The executors appeared in the proceeding and filed an account, objections thereto were filed by William Ziegler Jr., and one George W. Brandt; the two proceedings were consolidated by order of the Surrogate's Court and after a hearing, about August 21st, 1913, a form of decree was submitted. Before the same was signed and on the 10th day of September, 1913, William J. Gaynor died. By an order of the Surrogate's Court the representatives of William J. Gaynor were made parties to the proceeding, and a decree was thereafter made determining that William Ziegler, Jr., on arriving at the age of twenty-one years, was entitled to the entire accumulated net income, subject to payments therefrom and the deductions of lawful commissions. The account of the executors was settled and the survivors were directed to pay to themselves as trustees the balance of proceeds from the sale of real estate, less one-half commissions awarded to each of the surviving executors and to the estate of William J. Gaynor for receiving such proceeds, and one-half commissions to each above stated for payment by the survivor executors to themselves as trustees. The decree also settled the

account in respect to personal estate and income, and directed the payment of the accumulated net income to William Ziegler, Jr.

The only question presented by the present appeal relates to the accounting of 1913, and the decree entered thereon, particularly with reference to double commissions.

The principle of law applicable to an allowance of double commissions was succinctly stated by Judge FINCH in an early decision made by this court, as follows:

" That the same person may be entitled to compensation as executor, and also as trustee, in respect to the same estate, or some part thereof, is undoubtedly true, but does not follow in every instance where trust duties are imposed upon an executor. Where, by the terms or true construction of the will, the two functions with their corresponding duties coexist, and run from the death of the testator to the final discharge; interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed." (*Johnson* v. *Lawrence*, 95 N. Y. 154, 159.)

The rule stated in the case cited has been uniformly followed. (*Laytin* v. *Davidson*, 95 N. Y. 263; *McAlpine* v. *Potter*, 126 N. Y. 285; *Matter of Slocum*, 169 N. Y. 153; *Olcott* v. *Baldwin*, 190 N. Y. 99; *Matter of Martin*, 196 N. Y. 415.)

Recourse must be had to the will of Mr. Ziegler to determine whether the two functions of executors and trustees with their corresponding duties coexisted, and whether the testator contemplated that the parties named by him should exercise the joint functions as one office.

By the first clause of the will the testator gave to six individuals annuities of $2,400 each, payable quarterly each year during their respective lives. In the second

clause of the will he gave to his widow, E. Matilda Ziegler, the use of certain real estate, household furnishings, horses, carriages, etc., during her lifetime, and by the third clause of the will Mrs. Ziegler was given an annuity of $50,000 annually during her life, payable semi-annually. In addition the executors were to pay all of her necessary household expenses, repairs, taxes and assessments on real estate bequeathed to her and expenses of the house, stable, etc. By the fourth clause of the will the provision made for Mrs. Ziegler was to be in lieu of dower.

Though the testator made provision for the payment of annuities annually in the aggregate of $64,400, and in addition for the charges enumerated, he did not provide a fund from which such payments should be made, save in the sixth clause of the will.

By the fifth clause of the will the testator gave to William Ziegler, Jr., all of the rest and residue of the estate subject to the provisions of the sixth clause.

In the sixth clause of the will the testator appointed his wife, E. Matilda Ziegler, William S. Champ, William J. Gaynor, and his son, William Ziegler, Jr., at the age of twenty-one years, "my executors under this will." At the date of the will and of the death of the testator, William Ziegler, Jr., had not completed his fourteenth year. It is evident that the testator contemplated that a period of years might ensue during which the remaining three individuals named as executors should act as such before the son whom he named as a co-executor upon arriving at the age of twenty-one years could qualify and act under the will with the remaining executors named therein, and that his son upon attaining the age of twenty-one years should thereafter act as one of the executors of the will with those already acting in that capacity. That circumstance is significant when considered in connection with additional language employed by the testator in a specific enumeration of the duties

imposed by him upon the three executors who should qualify and upon his son as a co-executor when he should attain the age of twenty-one years. Immediately following the appointment of executors, the testator proceeded to define their duties. He denominated his executors named as "They" in four several places in that clause intending thereby to refer to the persons named as executors, viz., "my said wife, William S. Champ, William J. Gaynor, and also my said son at the age of twenty-one years." Thus, "They shall take, care for and invest my estate in safe securities, collect all the rents and incomes, pay out of the same all necessary charges and expenses, and all annuities or sums given by this will, and also for the support and education of my son William what may be necessary." By the language quoted, the testator provided a fund for the payment of the annuities and charges under the earlier clauses of the will, and then provided that the executors should "take, care for and invest" his estate, collect all moneys and make all payments therefrom. The payment of annuities was to continue during seven several lives, the payment of charges during one life, and "they," the executors, were to make such payments from year to year from the income of investments made by them. The testator continued, "the balance of income *they* shall invest in safe securities and keep with the *corpus* of my estate until my son comes twenty-one years of age. After he comes of age he shall receive the entire net income. When he comes twenty-five years of age *they* shall turn over to him one-quarter of the said *corpus*. *They* shall turn over to him another quarter thereof at the age of thirty, another at the age of thirty-five, and the last quarter at the age of forty."

The manifest intention of the testator was that the executors named should take the entire estate, invest the same, and retain after the payments directed to be made therefrom all income until William Ziegler, Jr., attained his twenty-first year; that the *corpus* of the estate was to

[218 N. Y.]           Opinion, per HOGAN, J.           [July,

be held intact by them until his son attained the age stated in the clause quoted, at all times to be kept invested by the executors, of whom his son would be one, and qualified to act upon reaching the age of twenty-one years. The ordinary duty of the executors to turn the estate into money was coupled with the direction to take, invest and care for the estate, and make payments of the bequests stated in the will at the times fixed therein, which time the testator anticipated would continue for a number of years. The duty thus imposed upon the parties named commenced upon the day they qualified as executors and such additional duty was inseparable from their functions under the will. I am unable to find in the will in question any evidence of intention of the testator to impose trust duties separate and distinct from the functions of executors upon the parties named as executors in said will.

The power of sale of real estate granted to the executors by the will was conditioned upon the consent of the testator's wife during her lifetime and also of his son after he attained the age of twenty-one years. Such authority does not in any manner militate against the construction I have placed on the will when read in connection with the remaining clauses of the will 'and especially with the seventh clause thereof which authorized the executors to leave his estate invested in the properties, stocks, bonds and mortgages, etc., " in which I may leave it." The statement was made upon the argument of this appeal and is verified by the account appearing in the record that the principal part of the estate of Mr. Ziegler was invested in one enterprise; that fact no doubt accounts for the authority in the executors to continue such investment.

From an examination of the will in this case I am led to the conclusion that it was the intention of the testator that the parties named should act as executors and trustees in a single capacity until the final closing of the

estate; that he did not contemplate a period of time when the function of executors would terminate and the function of trustees should commence. The decrees entered in the Surrogate's Court upon the accountings prior to the one under consideration and to which William Ziegler, Jr., was a party, are conclusive upon him as to any payments embraced in such accounts upon which a decree was entered, but do not constitute a bar to the decision of the question under consideration on this appeal. (*Bowditch* v. *Ayrault*, 138 N. Y. 222; *Rudd* v. *Cornell*, 171 N. Y. 114; *Matter of Hoyt*, 160 N. Y. 607.) Future accountings will of necessity be determined in accordance with the decision of this case.

The Kings County Trust Company, as executor of the estate of William J. Gaynor, appeals from the order of the Appellate Division which modified the order of the Surrogate's Court by striking therefrom an allowance to the estate of William J. Gaynor as commissions for paying over as executors to themselves as trustees the net balance of new principal derived from the sales of real property to November 30th, 1912, and commissions to said estate upon payment of balance of net income directed to be made by said decree.

In July, 1913, the surrogate had reached a determination on the questions presented on the accounting. In August, 1913, a form of decree was presented at the surrogate's office, and, as stated in the brief, the surrogate was absent on vacation. Mr. Gaynor died September 10th, 1913, before any decree was signed or entered. Thereafter by order of the surrogate the representatives of Mr. Gaynor were made parties to the proceeding. The decree in question was made and entered May 1st, 1914. The form of decree first presented at the surrogate's office was assented to by the attorneys for William Ziegler, Jr., but that proposed decree was not signed or entered. The decree in question here was not assented to by William Ziegler, Jr. At the time of Mr. Gaynor's death the

account of the executors had not been settled or any decree made for distribution. The surrogate held in substance that payments directed to be made under a decree entered eight months after the death of one of several executors, justified an allowance of commissions for making such payments to the estate of the deceased executor. The Appellate Division held to the contrary. The decisions of the courts and the language of section 2730 of the Code of Civil Procedure are to the contrary. (*Matter of Worthington,* 141 N. Y. 9.) The result of such allowance to the estate of Mr. Gaynor would also be in conflict with the views expressed in this opinion.

The order of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, CARDOZO and POUND, JJ., concur.

Order affirmed.