## In the Matter of the Estate of FRITZ MUSER, Deceased.

Surrogate's Court, New York County, December, 1923.

**Executors and administrators — accounting — claims against estate — when notice by claimant suspending payment of royalties under license agreement deemed not to absolve claimant from liability — estate entitled to its counterclaim for royalties due up to the time when patents were held invalid — when decree deemed res adjudicata.**

Decedent, the owner of two patents of mechanical devices used in washing machines, and a company, the petitioner herein, entered into license agreements and a supplemental contract to manufacture under said patents and for the payment of royalties.   The supplemental contract required decedent within six months from January 1, 1918, to commence an action to test the validity of the patent and in case they were declared invalid to prosecute an appeal to a final determination by January 1, 1920.   The fair import of the agreement was that if the patents were declared to be valid the contract continued for the life of the patents; if declared invalid decedent's rights to royalties ended at the date of such determination by the appellate court.   Upon the trial of the action in August, 1920, the court held the patents to be invalid and such determination was affirmed on appeal on December 14, 1921.   The delay to a great extent resulted from the death of the decedent in 1919 and the substitution of his executrix as party plaintiff, and was regarded by the company as excusable, for it continued its installment payments under the contract after January 1, 1920, and thereby waived any breach.   Under the terms of the agreement the company, in case of delay, had the option to terminate the contract or to suspend payment of royalties thereunder.   Accordingly the company on August 26, 1920, gave to the executrix of decedent a written notice as follows: " We hereby exercise our option to suspend the payment of royalty under both of said licenses and that we will suspend such payments beginning on October 1, 1920."   *Held*, that said notice did not absolve the company from further liability to the estate either from the date of the notice or from the date of suspension contained therein.

The right of the company to an interest in the patents having been established by a decree of the Surrogate's Court, affirmed by the Appellate Division, the

estate was entitled to its counterclaim against said company for all royalties up to the time when the contract was terminated by the decision of the appellate court which affirmed the determination of the trial court holding the patents to be invalid.

An issue as to the reasonableness of the settlement of a disputed claim concerning certain royalties which accrued to the estate of decedent from another company was raised in a prior accounting by the objections of the petitioner herein, and decided adversely to it.    *Held*, that the decree entered upon the confirmation of the report of the referee, expressly limiting the recovery of the company to its share of the royalties set forth in the account of the executrix and actually received by her, necessarily excluded the amount of royalties that might have been collected by her.

No appeal having been taken from such determination, said decree was *res adjudicata* and the company's claim to a share of the royalties which accrued to the estate of decedent from the other company will be dismissed.

PROCEEDING to have claims adjudicated against estate.

*Henry M. Stevenson,* for executrix.

*Giffin & Hannon (John W. Hannon* and *John T. Loughran,* of counsel), for Hurley Machine Company.

*Henry G. Gennert,* for Muser Bros., Inc.

*Edgar G. Wandless,* for Paul F. Compart.

*Wm. O. Gennert,* for estate of Therese Muser, creditor.

FOLEY, S.   The petitioner, the Hurley Machine Company, in this proceeding seeks to have two claims adjudicated against the estate.

(1) By a decree of this court, affirmed by the Appellate Division, the Hurley Machine Company has established its right to an interest in certain patents owned in his lifetime by the decedent. The amount due under that decree has been fixed by stipulation of the parties at the sum of $10,705.03.   The first question involves the right of the estate to set off against this amount a claim for royalties alleged to be due from the Hurley Machine Company. Muser was the owner of two patents of mechanical devices used in washing machines.   On December 12, 1917, Muser and the company entered into two license agreements and a supplemental contract to manufacture under the patents, and for the payment of royalties. A question existed as to the validity of the patents, and the supplemental agreement required Muser to commence an action within six months from January 1, 1918, in the United States District Court to test that question and to prosecute an appeal to a final determination in the United States Circuit Court of Appeals by January 1, 1920.   The action was begun but Muser died in 1919 and his executrix was substituted in his place as a party.   The fair import of the supplemental agreement was that if the patents were

Surrogate's Court, New York County, December, 1923.        [Vol. 122

determined to be valid, the contract continued for the life of the patents; if declared invalid by judgment of the United States Circuit Court, Muser's right to royalties ended at the date of that determination of invalidity; the Hurley Company might also terminate upon proper notice at certain times, or by the failure of Muser or his estate to complete the appeal by the the date mentioned. The action was not tried in the District Court until August, 1920. That court held the patents to be invalid and its determination was affirmed by the Circuit Court on December 14, 1921. It appears that the delay, to a great extent, resulted from the death of the decedent and the substitution of his executrix as a party. This delay was apparently regarded as excusable to the Hurley Company for it continued its installment payments under the contract after January 1, 1920, and thereby waived any breach. *Dunn* v. *Steubing*, 120 N. Y. 232. Under the terms of the agreement the Hurley Company, in case of delay, had the option to terminate the contract or to suspend payment of royalties due under it. Accordingly on August 26, 1920, the Hurley Company gave written notice to the executrix as follows: "We hereby exercise our option to suspend the payment of royalty under both of said licenses and that we will suspend such payment beginning on October 1st, 1920." The company contends that the effect of its notice was to absolve it from further liability to the estate either from the date of the notice or from the date of suspension contained in it. This contention must be overruled. I am of the opinion that the estate is entitled to a counterclaim against the company for all royalties up to December 14, 1921, when the contract was terminated by the decision of the Circuit Court. The parties in their agreement clearly distinguished between a notice of termination and a notice of suspension of payments. The Hurley Company elected to suspend rather than to terminate. It thereby preserved for itself any future benefits under the agreement, which gave to it highly favorable and advantageous rates of royalties. It was required to pay at a rate of not more than half the royalty charged to its competitors under other license agreements from Muser. Suspension of payment and the withholding of funds were weapons available to the Hurley Company to expedite the prosecution of the action. The Standard Dictionary defines "suspension" as the ceasing or causing something to cease from operation temporarily, and defines the word "suspend" to hold in a state of indecision or indetermination, and Bouvier (3d rev. p. 3212) states that "suspension" means a temporary stop of a right, a partial extinguishment for a time as contrasted with a complete extinguishment where the right is absolutely dead. So here, the

MATTER OF FRITZ MUSER. **167**

Misc. 164]    Surrogate's Court, New York County, December, 1923.

effect of the notice of suspension was merely to hold in abeyance the payment of royalties until the contract was terminated upon the date of the judgment of the Circuit Court.   All payments for royalties on machines manufactured up to that time then became due. This construction, with the distinction in the use of the terms by the parties, is also borne out by other clauses of the agreement, particularly paragraph 5, providing for appeals to the United States Supreme Court and the payment of royalties during the period of suspension.

The further contention of the Hurley Company that the judgment of invalidity by the United States District Court exempts it from further payment is likewise untenable.   The decision of the District Court, whether favorable or adverse, did not affect the continuation of the agreement.   The Hurley Company might have terminated, by proper notice.   Instead it continued to manufacture and sell the patented articles in the manner authorized by the agreement. It cannot, in disavowal of its terms, escape liability.   The inconsistency of its position is emphasized by its claims against the estate to royalties accruing from other licensees after the decision by the District Court.   Judge Cardozo in his opinion in *Farnsworth v. Boro Oil & Gas Co.*, 216 N. Y. 40, 46, points out, in a somewhat similar situation, that one enjoying rights is estopped from repudiating the dependent conditions and obligations which he has assumed.   He states: " It is the same as that of a licensee who has acquired the right to manufacture under an outstanding, though defective, patent.   *   *   *   The licensee will not be heard to say that the patent is a nullity (*Marston v. Swett*, 66 N. Y. 206; 82 N. Y. 526; *Hyatt v. Dale Tile Mfg. Co.*, 106 N. Y. 651; *Hyatt v. Ingalls*, 124 N. Y. 93)."   See, also, *Saltus v. Belford Co.*, 133 N. Y. 499; *Bennett v. Iron Clad Mfg. Co.*, 110 App. Div. 443; *Union Mfg. Co. v. Lounsbury*, 41 N. Y. 363.

(2) The second claim is to a share of certain royalties which accrued to the estate from the Conlon Electric Washer Company. I am of the opinion that this claim must be disallowed.   The dispute between the Conlon Company and the executrix was compromised and the settlement approved by an order of this court. No reservation in the compromise agreement inured to the benefit of the Hurley Company.   The question as to the reasonableness of that settlement was subsequently raised in the prior accounting by the objections of the petitioner here.   That issue was heard by the referee and his finding was adverse to the petitioner.   The decree of the surrogate confirmed the report and expressly limited the recovery of the company to its share of the royalties set forth in the account of the executrix and actually received by her.   This

direction necessarily excluded the amount of royalties that might have been collected by the executrix. No appeal was taken from that determination. The decree is, therefore, *res adjudicata* and the claim is disallowed. Surrogate's Court Act, § 80; *Matter of Ziegler*, 218 N. Y. 544, 555; *Matter of Hoyt*, 160 id. 607; *Bowditch* v. *Ayrault*, 138 id. 222, 231.

The claim of Paul F. Compart is disallowed.

Submit decree accordingly allowing the counterclaim of the estate in the sum of $10,859.84 for royalties to October 1, 1920, and $7,094.50 for royalties to December 14, 1921, a total of $17,954.34, and crediting to the Hurley Machine Company the sum of $10,705.03. Interest may be adjusted on the settlement of the decree.

Decreed accordingly.