In the Matter of the Accounting of MANUFACTURERS AND TRADERS TRUST COMPANY, as Trustee of an Express Trust Made with CHARLES J. H. MORITZ, Respondent; MARINE TRUST COMPANY OF WESTERN NEW YORK et al., as Executors of CHARLES B. HOLLAND, Deceased, Appellants.

Fourth Department, January 9, 1964.

*Norman Penney* for appellants.

*Hodgson, Russ, Andrews, Wood & Goodyear (Stephen H. Kelly* of counsel), for respondent.

WILLIAMS, P. J.   The question presented is whether the Manufacturers and Traders Trust Company (hereinafter called " trustee "), acting under an express trust agreement between the trustee and one Charles J. Holland Moritz, is entitled to so-called receiving commissions on the increase in value of the corpus of the trust accruing between the time of the original receipt of such corpus by the trustee and the time of the present accounting.

It should be said at the outset that the trustee is acting under a trust agreement providing a specific compensation rather than under the statutory schedules established by section 1548 of the Civil Practice Act.   It is also important to note that the terms of the agreement as to compensation were reached after extensive negotiations between the parties concerning the very question which is here involved, that is, whether receiving commissions should be paid on the increased value of the corpus.

At Special Term all the parties requested a determination of the controversy on the merits.   The court insisted, however, that a portion of a previous 1952 accounting (the period of the present accounting is from 1952 to 1959) be included in the petition for judicial settlement and then determined that, because commissions on increased values had been allowed upon the 1952 accounting, such allowance had established the law of the case and was determinative of the present question.   The objections to the present account were dismissed on that ground.

We might state, in explanation of the position taken at Special Term, that the objector, who was a beneficiary under the trust and who is now represented herein by his executors, was a cotrustee with the present trustee in 1952 and joined in the petition for judicial settlement in that year.   Normally he would be bound by the account, the petition and the order of judicial settlement.   However, there were unusual circumstances at that time, which we shall discuss later.

An original trust agreement was entered into after, as we have said, extensive negotiations as to commissions, as of the 1st day of July, 1940, and thereafter on the 15th day of May, 1947 the trust agreement was amended without any change in the fundamental provisions relating to compensation but

with only slight changes in language. There is no contention that the amended agreement altered the original agreement in respect to compensation and commissions. Because the language of the original provision is somewhat more extensive than the second, we shall quote both. The first was: "The Corporate Trustee shall be entitled to receive as compensation for its services in the administration of the trusts herein created a commission of two percent (2) on the income received annually from the said Trust Funds and shall also be entitled to receive a commission of two percent (2%) on the market value of the principal of the said Trust Funds, to be determined as of the time of payment, one percent (1%) of which shall become due and payable when and as the Trust Funds shall come into the possession of the Trustees hereunder, and the remaining one percent (1%) of which shall become due and payable upon the distribution thereof, provided, however, that if this trust shall be terminated during a period of two (2) years from the date of execution of this instrument, the Corporate Trustee shall receive no distribution fee; if terminated during a period of more than two (2) years but less than five (5) years, the Corporate Trustee shall receive a distribution fee of one-half (½) of one (1) percent of the market value of the principal at the time of distribution, and if terminated at any time after five (5) years the Trustee shall receive the full distribution fee of one (1) percent." The amendment provided: "The Corporate Trustee shall be entitled to receive as compensation for its services in the administration of the trusts herein created a commission of two per cent (2%) on the income received annually from the said Trust Funds and shall also be entitled to receive a commission of two per cent (2%) on the market value of the principal of the said Trust Funds, to be determined as of the time of payment and to be payable as to one-half thereof upon receipt of the Trust Funds and as to the remaining half upon the distribution thereof."

An analysis of these provisions discloses clearly that it was intended that the trustee should have a receiving commission of 1% to be determined when and as the funds should come into its possession. This would be computed "on the market value of the principal * * * to be determined as of the time of payment". The time of payment as to receiving commissions was specified as of the date when the funds should come into the possession of the trustee. A further distributing, or paying, commission should likewise be payable upon distribution. This was slightly changed in language, but not in meaning, in the amendment, to provide for commissions of 2% "on

the market value of the principal  \*  \*  \*  to be determined as of the time of payment and to be payable as to one-half thereof upon receipt of the Trust Funds and as to the remaining half upon the distribution thereof.''

The simple meaning of this provision is that the receiving 1% should be computed on the value at the time of receipt and the disbursing 1% should be computed upon the value at the time of payment or disbursements. The language allows of no other interpretation. In other words, it is not necessary to go beyond the four corners of the instrument to determine that the trustee is not entitled to commissions on the increased value of the corpus which accrued after receipt of the corpus by the trustee. It is difficult to envision language which would express this intent more clearly. Not only that, but this language expresses the agreement that the parties had reached by exchange of correspondence before either the original or the amended trust agreement had been prepared and executed.

If this question were before us in the first instance, there would be no problem. We would simply hold that the objections should be sustained and that receiving commissions of 1% on increases should be disallowed. However, because of the previous 1952 accounting to which we have referred and the order therein approving such commissions on increases, it is necessary to consider the legal questions thus presented.

When the 1952 accounting and the petition for judicial settlement thereof were prepared, as we have said, the bank trustee and the objector were cotrustees. Thus each was in a fiduciary relation to the other and, as to the question of fees, the bank trustee, supposedly an expert in such matters, surely owed to its layman cotrustee the duty and obligation of completely advising him as to the respective rights and duties of the bank vis-a-vis the objector. The objector had the right to look to the bank trustee, with its vast trust experience, for guidance and advice as to matters such as this and to have a full and complete explanation not only of his rights but as to his possible objections to the accounting. It does not appear that the matter was carefully and cautiously discussed with him. In fact, when he raised the question of the allowance of commissions on increase, he was told that the order of judicial settlement had been drawn by one of the attorneys for the bank trustee before there had been an opportunity to consult with him and that, if he still so desired, he could raise the legal question on the next accounting. In reliance upon this, it appears that the objector did not press the matter at that time. The present accounting is the ''next accounting''. All of these latter facts are undis-

puted. The objector now brings up this matter upon this present accounting, not only as to commissions on increase in the account presently before us, but also as to the allowance of such commissions on the 1952 accounting. It may be said, to the credit of both parties, that both asked the court for a determination of the problem not only in the present accounting but also as to the 1952 accounting. We consider the question of the propriety of the allowance of such commissions in the 1952 accounting squarely before us.

In taking the 1% commission on increased values, it appears from a letter of one of its officers that the trustee was under the mistaken impression that the statutory schedule of allowances would prevail under section 1548 of the Civil Practice Act despite subdivision 11 thereof which reads: "Where the instrument creating the trust provides a specific compensation to a trustee, he is not entitled to any other allowances for his services." But this was incorrect because the statutory commissions do not apply in the face of a specific contract to the contrary. (*Matter of Schinasi*, 3 N Y 2d 22.)

Even were it not for the fiduciary relationship of the parties, which alone might be sufficient to justify review, especially in view of the trustee's incorrect interpretation of applicable legal principles (*Matter of Levy*, 19 A D 2d 413), and the promise that the question could be raised upon a subsequent accounting, the 1952 order would not be *res judicata* as to the substantive issues presented in the 1959 accounting. In the 1952 proceeding there were no objections filed and no issues raised to require a hearing. Moreover, the papers filed in that accounting do not clearly disclose the basis for the computation of commissions. We are, therefore, not confronted with a substantive issue which had been fully litigated in a prior accounting. (See *Thorn v. De Breteuil*, 179 N. Y. 64.) Under these circumstances the determinative effect of the previous order does not extend beyond prohibiting reconsideration of the specific items of distribution judicially considered and approved at that time. (*Matter of Hubbell*, 302 N. Y. 246, 253; *Matter of Ziegler*, 218 N. Y. 544, 555; *Rudd v. Cornell*, 171 N. Y. 114; *Matter of Hoyt*, 160 N. Y. 607, 618; *Bowditch v. Ayrault*, 138 N. Y. 222.) As was said in *Megrue v. Megrue* (231 App. Div. 245, 247): "It now appears to be well settled that in accounting proceedings, a decree or order settling an account amounts to a decision only as to the specific items included in the accounts involved; it does not establish any binding precedent which is *res adjudicata* as to future items." The same result was reached in *Matter of Muller* (14 A D 2d 439, 443), where the court said: "If it

means that the trustee having made an improper distribution, even by court order, is thereby bound to continue making improper distributions, we cannot agree.'' At least with respect to the issue as to what commissions may properly be taken in this accounting, therefore, the previous accounting does not preclude a present review of the problem. Thus there is nothing in the previous order that will prevent us from making a determination in the present proceeding to the effect that commissions on increases were improperly charged. We hereby hold that they may not be taken.

There are, however, questions as to whether or not the 1952 order may be reconsidered at this time. The determination of these questions requires a development of factual matters which are not adequately before us. It may be, from a factual standpoint, that the objector knowingly participated in the framing of the petition and in the request that commissions be allowed and that he thus is estopped from attacking the 1952 order which allowed such commissions. It may also be that, regardless of the acts of the objector, the trustee, because of its conduct, relationship and promises, is estopped from asserting that the 1952 order is decisive and binding. These are matters that should be determined at Special Term. If, after a hearing and a factual determination, it is found that the 1952 order is open to attack by the objector, then Special Term should hold that commissions on increases were improperly taken and that they should be returned to the estate.

The order appealed from should be reversed, commissions on increases disallowed in the present accounting, and the matter remitted to Special Term for a hearing and determination in accordance with this opinion.

BASTOW, HENRY, and NOONAN, JJ., concur.

Order unanimously reversed and matter remitted to Erie County Special Term for further proceedings in accordance with the opinion, with costs to appellants payable by respondent bank.